# Patricia A. Lowery v. Vernon E. Lowery

[591 A.2d 81]

No. 90-391

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed April 5, 1991

*Greene & Seaver, Inc.*, Burlington, for Plaintiff-Appellant.

*Caldbeck & Schweitzer*, Shelburne, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Patricia Lowery, appeals from a judgment modifying a California divorce maintenance order by reducing prospective payments. We reverse and remand.

The parties were divorced in California in 1984. Defendant was ordered to pay $700 per month maintenance, "continuing until the death or remarriage of [plaintiff], or further order of the court." As additional maintenance, defendant was ordered "to keep and maintain in full force and effect his existing hospital and medical insurance available through his employment so long as he is legally able to do so." If there came a time when he could not cover plaintiff, he was ordered to purchase "a comparable policy of insurance" for her. In either event, he was to pay "any uninsured medical, hospital, or doctor bills" she incurred. This supplemental maintenance order was also to continue until plaintiff remarried or died or until further order of the court.

At the time of the California order, defendant earned $33,000 per year. Subsequently, defendant moved to Vermont where he

became employed at Simmonds Precision at a salary of $40,000 per year. He was terminated from that job on January 6, 1989, and began receiving unemployment compensation at $169 per week. In January 1990, defendant took a temporary job which paid $19 per hour.

In October of 1989, plaintiff brought a petition to enforce the California maintenance order, alleging that defendant had ceased paying and owed an arrearage. Defendant responded by seeking a modification of the order. After hearing, the court ordered defendant to pay an arrearage for unpaid maintenance and medical bills up to January 8, 1990, the date on which defendant petitioned for modification. The court prospectively modified the California order to reduce maintenance to $50 per month after January 8, 1990. The order is silent on defendant's duty to pay plaintiff's medical bills after the modification.

Plaintiff appeals, raising three alleged errors: (1) the court had no jurisdiction to modify the California maintenance order; (2) the evidence did not support the maintenance reduction; and (3) the court improperly failed to specify whether defendant was obligated to pay plaintiff's future medical expenses. Although we find that the court had the power to modify the California order, we conclude that it went too far in that modification and reverse and remand for a new determination of defendant's obligation to pay maintenance and plaintiff's medical expenses after January 8, 1990.

■ Plaintiff's claim that the court had no power to modify the California order is based on our decision in *Grant v. Grant*, 136 Vt. 9, 14, 383 A.2d 627, 630 (1978). In that opinion, however, we expressly refrained from deciding whether our statute governing modification of maintenance orders applied to orders from other states. *Id.* We now answer that question and hold that a Vermont court with personal jurisdiction over an obligor under a maintenance order from another state has the power to modify that order prospectively if the state issuing it allows prospective modification.

Plaintiff first argues that foreign maintenance awards are entitled to full faith and credit under the United States Constitu-

tion,[1] but that the principles of full faith and credit do not allow one state to modify another state's order. Defendant's position is that Vermont may recognize the California order, treat it as a Vermont order, and modify it under Vermont law.

Although the United States Supreme Court has not spoken recently in this area, its settled interpretation has been that a foreign maintenance order is entitled to full faith and credit only with respect to amounts already accrued, and then only if such amounts are not subject to retroactive modification in the issuing state. See *Sistare v. Sistare*, 218 U.S. 1, 16–17 (1910); see also *Miller v. Miller*, 123 Vt. 221, 224, 186 A.2d 93, 96 (1962). See generally Foster & Freed, *Modification, Recognition and Enforcement of Foreign Alimony Orders*, 11 Cal. W.L. Rev. 280 (1975). Under this rule, we have given effect to a California maintenance award, enforcing it with respect to the arrearage. *Berger v. Berger*, 138 Vt. 367, 371, 417 A.2d 921, 923 (1980); see Note, *Full Faith and Credit and the Recognition of Foreign Alimony Decrees in Vermont*, 6 Vt. L. Rev. 539 (1981) (commenting on *Berger*). California does not allow modification of maintenance arrearages. See *Bryant v. Bryant*, 161 Cal. App. 2d 579, 583, 326 P.2d 898, 900 (1958). Thus, the full faith and credit clause required the trial court here to enforce the California order with respect to the arrearage, as it did.

For purposes of this case, the more important part of the *Sistare* rule is that prospective maintenance orders are not entitled to full faith and credit if they can be modified in their state of origin. Although some courts have found that full faith and credit requires enforcement of a prospective maintenance award from another state, see *Light v. Light*, 12 Ill. 2d 502, 511, 147 N.E.2d 34, 40 (1958), we conclude that the *Sistare* rule precludes reaching this result. See *Walzer v. Walzer*, 173 Conn. 62, 67, 376 A.2d 414, 416 (1977); Comment, *Interstate Enforcement of Modifiable Alimony and Child Support Decrees*, 54 Iowa L.

---

[1] The full faith and credit clause, Article IV, § 1 of the United States Constitution, provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Rev. 597, 607 (1969) (*Light* rationale "has not been widely accepted").

■ Our holding that we are under no federal constitutional obligation to recognize the prospective obligation to pay maintenance under the order of another state is not a conclusion that we must decline to recognize the order. We agree with Justice Schaefer's observation in *Light* that "[u]nless [alimony decrees] receive interstate recognition, the insulated judicial systems of the several States may become sanctuaries within which obligations that have been fully and fairly adjudicated in another jurisdiction may be escaped." 12 Ill. 2d at 510, 147 N.E.2d at 39. It is not an effective remedy for plaintiff to wait for maintenance amounts to accrue in California and then bring repeated new enforcement actions in Vermont for the arrearage. See *Worthley v. Worthley*, 44 Cal. 2d 465, 474, 283 P.2d 19, 25 (1955) ("the costs of litigation and the dilatoriness of the recovery would substantially reduce the value of the support to which plaintiff is entitled"). Therefore, as a matter of comity, we will recognize prospective maintenance obligations created by orders of other states. See *id.* at 473–74, 283 P.2d at 24–25. See generally Comment, *Interstate Enforcement of Modifiable Alimony and Child Support Decrees*, 54 Iowa L. Rev. at 607–11.

■■ Once we ground enforcement of foreign maintenance orders on comity, and retain discretion on how we will implement that comity, we conclude that modification should be available in appropriate circumstances. Where a trial court treats a foreign order as an enforceable Vermont order, it should analyze it as it would any other order for purposes of 15 V.S.A. § 758 (authorizing modification of maintenance "upon a showing of a real, substantial, and unanticipated change of circumstances"). Plaintiff argues that defendant voluntarily migrated across the country and should be required to go back to California to seek modification. This remedy, while theoretically possible, is impracticable in a case such as this where defendant apparently lacks the income to pay his maintenance obligation. In any event, we are reluctant to penalize defendant's right to travel to Vermont by limiting the relief available to him in a Vermont court to which plaintiff has come for enforcement. The

parties are before us, and we should resolve the entire dispute between them.[2]

██ ██ We hold that a prospective maintenance obligation from another state can be modified in this state if the obligation could be modified in the state where it was created. The California order at issue here specifically allows for modification. California, like Vermont, allows modification of maintenance awards on a showing of changed circumstances. See California Civil Code §§ 4801(a), 4801.9 (1983). Thus, the court acted properly in considering defendant's request to modify the prospective maintenance obligation.

Plaintiff's second argument is that, even if modification were permissible, there were insufficient grounds to support the court's modification order.[3] The court found that defendant lost his job in January of 1989 and throughout that year received unemployment compensation amounting to less than 25% of his former salary. The evidence also demonstrated that defendant had worked at a temporary job from January 1990 up to the date of the hearing in April. Although that job was expected to end in mid-April, it provided defendant with an income close to the amount he received from his former permanent employment and higher than that on which the 1984 maintenance award was based.

██ ██ In order to obtain modification of the maintenance award, defendant was required to show a "real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758; see *Gil v. Gil*, 151 Vt. 598, 599, 563 A.2d 624, 625 (1989). A substantial reduction in defendant's income could be found to be a suffi-

---

[2] In addition, this approach to postdivorce maintenance is consistent with the policy on spousal support, enforceable through the Uniform Reciprocal Enforcement of Support Act. See 15 V.S.A. § 428(a); *Bullard v. Bullard*, 144 Vt. 627, 628–29, 481 A.2d 1049, 1050–51 (1984).

[3] Our holding on the modification of out-of-state maintenance awards necessarily creates a choice of law question: which state's modification standards will govern in this case? See E. Scoles & P. Hay, Conflict of Laws §§ 15.37–15.38 (1982). We do not reach that question because neither party has argued or demonstrated here, or in the trial court, that there is any relevant difference between the laws of California and Vermont on modifying maintenance awards or the range of permissible modification. See V.R.C.P. 44.1(a).

cient change of circumstances. See *Bullard v. Bullard*, 144 Vt. 627, 629, 481 A.2d 1049, 1051 (1984) (court may look at financial situation of spouse from whom maintenance is sought). Although we would be reluctant to conclude that a temporary, short-term reduction of income was sufficient to warrant modification, see, e.g., *Haynie v. Haynie*, 19 Ohio App. 3d 288, 290, 484 N.E.2d 750, 753 (1984) (Jackson, J., concurring) (spouse beginning medical practice did not meet burden to show that his financial problems were more than temporary), defendant's interruption of income was sufficiently long-term for the court to conclude that a change of circumstances existed.

We do not believe, however, that the change in defendant's circumstances warranted the modification the court made. Although defendant was laid off from his job, there was no evidence that he would not find replacement employment. His temporary job produced sufficient income to meet the California maintenance award.

The court's order left plaintiff with a permanent alimony award that was only 7% of that provided in the California order. She has no way to determine whether defendant is employed and has only limited ability, living three thousand miles away, to seek an upward adjustment if defendant's income increases.

We recognize that the trial court has wide discretion in fashioning maintenance orders, but that discretion is not unlimited. See *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 386 (1988). We cannot conclude that the order here fell within the court's discretion. Other courts have made adjustments in an existing maintenance order to match the obligor's temporarily changed circumstances. See *Johnson v. Johnson*, 185 Conn. 573, 577, 441 A.2d 578, 579 (1981) (court could make three-month reduction in defendant's alimony and support obligation); *Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn. 1982) (where new business startup may have resulted in a temporary reduction in income, court should consider, among other alternatives, reduction or deferral of alimony). In the present case, the circumstances warranted a temporary adjustment only, and it was improper to make a permanent, substantial reduction in defendant's maintenance obligation.

On remand, the court should consider placing a time limit on any maintenance reduction or returning automatically to the

California amount for any period in which defendant is remunerated above a certain threshold. Cf. *Cleverly v. Cleverly*, 147 Vt. 154, 159–60, 513 A.2d 612, 615 (1986) (court must impose time limit on rehabilitative alimony even where it is difficult to predict the exact length of time maintenance will be required; if maintenance period is too short, recipient can request modification). The court should also consider a reporting requirement so that plaintiff is informed periodically about defendant's employment status and income. On remand, the court may need to take additional evidence on the current situation to frame an appropriate order. See *Klein v. Klein*, 153 Vt. 551, 556, 572 A.2d 900, 903 (1990).

 Plaintiff's third claim is that the trial court failed to address the provision in the California order requiring defendant to maintain medical insurance and pay plaintiff's medical expenses. We are unable to determine from the court's silence on this issue what it intended. We will not speculate on the court's action when it does not address the issue in its findings and conclusions. See *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190–91 (1985). Accordingly, the court on remand must make findings and conclusions addressing this part of the California order and specifying whether it continues in the Vermont order.

*Reversed and remanded.*