## Margit B. Sachs v. Thomas D. Sachs

[659 A.2d 678]

No. 94-263

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 14, 1995

*Neil H. Mickenberg* and *William M. Dorsch* of *Mickenberg, Dunn, Sirotkin & Dorsch,* Burlington, for Plaintiff-Appellant.

*Susan L. Fowler,* Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff wife appeals and husband cross-appeals from an order of the Chittenden Family Court construing the parties' 1984 divorce decree with respect to retirement benefits, Social Security benefits, and attorney's fees. We affirm the court's decision entitling

plaintiff to share in the appreciation of defendant's retirement and Social Security benefits, but reverse the court's method of calculating those benefits and the court's denial of attorney's fees.

The parties were divorced in 1984 after twenty-two years of marriage. At the time of the divorce, defendant was fifty-nine years old and had been employed as a professor at the University of Vermont since 1962. The final order provided for alimony and child support, and paragraph 10 allocated husband's retirement and Social Security benefits upon retirement. It stated:

> [U]pon Defendant's retirement, Plaintiff shall be entitled to and shall receive 50% of any of Defendant's employment related and Social Security pension or retirement benefits as those benefits existed as of August 1, 1984 (including both lifetime retirement and survivors benefits as available) which payments shall constitute alimony. It is agreed that the amount of Plaintiff's share of such benefits will not continue to accrue after August 1, 1984. . . . It is agreed that Defendant's accrued retirement benefits under TIAA-CREF as of August 1, 1984[,] during the first year of payments under the 20 year guaranteed option are expected to yield approximately $669 in total monthly benefits if Defendant retires at age 62 and $814 in total monthly benefits if Defendant retires at age 65. It is also understood that the amount of TIAA-CREF retirement benefits will vary (subsequent to the first year of payments) depending upon the status of TIAA-CREF investments. Using the above figures as a base, Plaintiff shall share in 50% of any increase or decrease in TIAA-CREF retirement benefits accrued to August 1, 1984[,] and caused by market fluctuations.

Husband retired on June 30, 1993 at age sixty-eight, and when the parties could not agree on the interpretation of paragraph 10 of the 1984 agreement, wife moved to enforce. The central issue at trial was the division of the TIAA-CREF account, to which husband contributed throughout the marriage. The total investment in the account at the date of the divorce in 1984 was $77,679. This amount, less husband's post-divorce contributions, appreciated to $304,556 by the time of his 1993 retirement, due solely to an increase in the value of the underlying investments, and not to additional contributions from earnings on husband's part.

The court concluded that wife was entitled to share in 50% of the TIAA-CREF benefits, amounting to $814 per month — the dollar amount specifically set forth in the 1984 order as husband's approximate benefits at age sixty-five. The court further concluded that wife was entitled to share in 50% of husband's Social Security benefits that were payable at age sixty-five. Wife's motion for attorney's fees was denied.

Wife moved to alter or amend, arguing, inter alia, that the court should have awarded her 50% of the actual TIAA-CREF and Social Security benefits payable to the husband at age sixty-eight, rather than the amount set forth in paragraph 10 of the 1984 order as an example of benefits applicable if he retired at sixty-five. The motion was denied, and wife appealed. Husband objected to the award of any sum greater than 50% of the value of the retirement account in 1984 and cross-appealed on that question.

■ Addressing the claims of both parties, we must examine the court's reasoning carefully, recognizing, however, that its construction of the 1984 order is strictly a question of law that we must determine independently. See *Dartmouth Sav. Bank v. F.O.S. Assocs.*, 145 Vt. 62, 66, 486 A.2d 623, 625 (1984) (legal effect of written instrument is matter of law determinable at appellate level).

Husband's first claim is that the court incorrectly ordered that wife should receive 50% of the growth of husband's retirement benefits. He relies first on the meaning of the word "accrue" in the clause in paragraph 10 stating that "[i]t is agreed that the amount of Plaintiff's share of such benefits will not continue to accrue after August 1, 1984." He contends that after the date of the 1984 order no further credits, including interest and appreciation, were intended to "accrue" to wife's benefit.

■ The fallacy in his argument is that, construed in isolation, the word "accrue" does not convey any notion of what is to be accrued. In context, however, paragraph 10 establishes a clear overall scheme under which wife's 50% share of husband's benefits on the date of the 1984 order "accrues," i.e., is fixed and established as a "base." The word "accrue" in the clause in question clearly refers to amounts credited to that base. Cf. *Hoover v. Cumberland, Md. Area Teamsters Pension Fund*, 756 F.2d 977, 983-84 (3d Cir. 1985) (under ERISA, accrual provisions provide formula for calculating amount of normal retirement benefit employee has earned at any given time). What would happen to that share or base was not determinable in 1984;

hence, the parties used illustrations based on estimates of what wife's share might be worth if husband retired at sixty-two and at sixty-five.

As the court pointed out, these estimated amounts are substantially higher than the $581 in total monthly benefits as of the date of the 1984 order, and the clear intent of the provision was that wife's share would include future growth in the value of her share of the base account. If the parties had intended to base the wife's share of post-retirement benefits on the $581 figure, they could simply have said so and avoided the need for additional estimates and formulas. To the contrary, the provision makes clear that the base amount should be set as of the date of divorce and adjusted for later fluctuations reflecting investment experience. Assuming positive growth after 1984, the later husband retired the greater the adjusted base and the concomitant benefits to wife would be.

■ In light of this overall scheme, the word "accrue," as wife contends, simply underscores that the date of the 1984 order was a focal date after which retirement benefits attributable to the marriage were to be calculated and set as a base, with benefits to be calculated and awarded upon husband's subsequent retirement.

■ Husband's second textual argument is that the use of the word "fluctuations" implies that the order did not pertain to growth of the base amount. The 1984 order allowed wife to "share in 50% of any increase or decrease in TIAA-CREF retirement benefits accrued to August 1, 1984, and caused by market *fluctuations*." Husband argues that the word "fluctuations" does not imply "growth," since the former implies movements both up and down, while the latter means only upward movement. This argument is without merit. In referring to "any increase or decrease," the order acknowledged that the future might enhance or diminish wife's base. The future was uncharted, and the risks were to be shared. Use of the word "fluctuations" was appropriate and did not imply that "growth" meant anything different or that it was to be excluded.

■ Finally, husband argues that because the 1984 order treated defendant's retirement benefits as income for purposes of determining alimony, and not as marital property, wife was not entitled to any growth in the base amount. In the context of the 1984 order, his emphasis on the distinction between alimony and a property award is misplaced. As the court pointed out, pensions may be considered as marital assets, *McDermott v. McDermott*, 150 Vt. 258, 259-60, 552 A.2d 786, 788 (1988); they may also be considered as a source of

income upon which an award of spousal maintenance may be based. *Repash v. Repash*, 148 Vt. 70, 72, 528 A.2d 744, 745 (1987).

Ultimately, it is the agreement terms, not the characterization of the benefit, that determined the allocation of growth in the value of the TIAA-CREF account between the date of the 1984 order and the date of retirement. This reading makes sense as a matter of construction of the 1984 order, and it does not violate notions of equity. The court did not err in ruling that wife was entitled to growth in the base amount.

Each of the parties challenges the court's method of calculating and apportioning the increase in the TIAA-CREF account between the date of the 1984 order and the date of husband's retirement. The arguments relate to two distinct time frames — 1984 to the date in 1990 when husband became sixty-five, and 1990 to 1993, when he actually retired. The court's conclusions as to each time frame are interrelated and state as follows:

> During the three year period between 1990, the year the parties anticipated [husband's] retirement at age 65, and 1993, the year when [husband] actually retired, [Wife] was paid the full amount of alimony to which she was entitled under the order. If she receives 50% of the base amount from the TIAA-CREF account based upon a retirement [at] 65 and 50% of [husband's] social security benefits as set forth below, she will receive virtually the same monthly benefit that she was receiving prior to [husband's] retirement.

> If, on the other hand, she is permitted to [receive] a 50% share of the growth in the 1984 contracts between 1990 and 1993, she will receive more in post retirement alimony payments than she received prior to [husband's] retirement. This result is inconsistent with the intent of the order with respect to the use of [husband's] retirement benefits as a source of income for [Wife's] alimony payments.

> The court concludes therefore that Plaintiff is entitled to a monthly benefit amount from the 1984 TIAA-CREF accounts equal to 50% of $814, the base monthly benefit amount set forth in the order which [Wife] would have received had he retired at age 65.

■ ■ Wife contends that the court erred first in calculating her benefits as if husband had retired in 1990 at sixty-five, rather than

upon his actual retirement in 1993 at sixty-eight, and a second time in basing the award on the $814 figure recited in the 1984 order as the possible or likely total monthly benefit, rather than on the total actual appreciated value of the account at the date of retirement.

We agree with both of these arguments. The court based the award of TIAA-CREF benefits on the estimated amounts in the 1984 order. There is, however, no support in the 1984 order for using estimates in that order as actual TIAA-CREF account balances at the date of husband's retirement. They were merely examples of potential appreciation at different retirement ages.

██ The court's justification for using the 1990 retirement date and the $814 estimated retirement figure is that in doing so wife "will receive virtually the same monthly benefit that she was receiving prior to [husband's] retirement." Nothing in the 1984 order suggests, however, that it was the parties' intention to match the pre- and post-retirement alimony amounts. On the contrary, that outcome appears directly contrary to the parties' bargain, under which they effectively opted for their own version of the deferred distribution or reserved jurisdiction method of distributing a spouse's pension, rather than the immediate offset method. See *McDermott*, 150 Vt. at 260, 552 A.2d at 788.[1] The election implied potential benefits and detriments to both parties. It tended to insulate wife from the vagaries of husband's decision as to when to retire, for if he were to opt for later retirement, wife's base would continue to appreciate, and if she received less in the preretirement years, she could recoup the difference in the post-retirement years, assuming provident and successful management of the retirement account. Husband paid a fixed dollar amount of alimony while employed, when he presumably could meet the obligation, and an amount based on the fortunes — good or bad — of his TIAA-CREF account on the date of his retirement.

---

[1] Husband contends that "[t]he intention of a divorce decree is to separate the parties personally and financially . . . ." The parties, however, may elect otherwise, which they did in this case. As we commented about the deferred distribution approach in *McDermott*, 150 Vt. at 261, 552 A.2d at 789:

This method . . . allows the court to base its distribution upon actual figures rather than assumptions as to retirement age and other variables. It also avoids circumstances that would require an unwarranted degree of speculation. *Deferred distribution, however, may prolong the strife between the parties because final resolution is delayed.*

(Emphasis supplied.)

Husband benefited in not having to pay an immediate lump sum to wife, as he would have to have done under the immediate offset approach. He was reasonably certain that the alimony award would be consistent with his earning capacity while employed and with his actual financial condition upon retirement. The court could not properly infer from the clear expression of the parties' intent in the 1984 order the additional, unexpressed condition that the pre- and post-retirement alimony benefits should be the same.[2]

In his brief, husband attempts to characterize the bargain very differently on policy, rather than textual, grounds, arguing that because the defendant worked significantly longer than estimated by the parties when the divorce was negotiated the plaintiff received an unexpected windfall by way of full alimony payments for six years longer than expected.

First, the argument, if anything, confirms that his main complaint is not with the text of the parties' 1984 understanding, but with its unexpected outcome. More importantly, the argument stands the 1984 order on its head. Under the order, the longer husband worked, the longer wife had to wait to receive her share of the retirement benefits, which were far greater than her preretirement alimony award. Far from constituting a windfall, the growth in her share of the retirement account was the only means under the 1984 order for wife to end up with roughly the same financial benefits, whether husband retired earlier or later.

There is nothing in the 1984 order suggesting that wife's post-retirement benefits should not exceed her preretirement alimony, and in fact, the parties' choice of what is essentially a risk management decision, with separate alimony formulas for pre- and post-retirement periods, almost certainly guaranteed that the alimony amounts before and after retirement would not be the same.

What husband urged, and what the court in fact did, was to stray from the clear language of the 1984 order and to recast the equities

---

[2] The court also attempts to support its conclusion that the pre- and post-retirement amounts should be equal by reading the 1984 order to cap benefits at the preretirement alimony level.

The court was correct that the retirement benefits would be the source of the post-retirement alimony, but nothing in the agreement supports the notion that the payments, which are otherwise easily determinable under paragraph 10, should be capped at the prior alimony level. The only mention of a cap in paragraph 10 relates to earnings from husband's possible post-retirement consulting income — a provision that makes it even clearer that no cap was intended with respect to the flows from the retirement account.

in terms of the financial condition of the TIAA-CREF account nine years later. There was no basis in law for doing so. Wife was entitled to benefits based on her 1984 share, as that share had appreciated up to the date of husband's actual retirement.

Our conclusions apply equally to wife's Social Security benefits. The court stated that "[f]or the reasons set forth above with respect to the TIAA-CREF account, the court concludes that Plaintiff is entitled to one half of the Social Security benefit which would have been available to Defendant at age 65 assuming no further contributions after August 1, 1984 . . . ." We agree that under the terms of the 1984 order the Social Security account stands on the same footing as the retirement account. Payment should have been based on the value of the Social Security account on the date of husband's retirement in 1993 at age sixty-eight.

Finally, the 1984 order provided that "[i]n the event that either party is required to bring legal action to enforce any provision of this Order, the non-prevailing party shall pay the prevailing party's attorney's fees and legal expenses." The court denied wife's prayer for attorney's fees, perhaps because it believed that neither party prevailed. The present decision leaves no doubt that wife is the prevailing party and that she should receive attorney's fees as provided under the 1984 order.

*The decision of the family court is affirmed with respect to awarding plaintiff a share in the appreciation of defendant's retirement benefits and Social Security benefits; the remaining issues are reversed and the cause is remanded.*