### Elizabeth WARDWELL (Clapp) v. Michael CLAPP

[720 A.2d 862]

No. 97-233

July 15, 1998. Defendant appeals from a family court order making certain short-term adjustments in his spousal maintenance obligation, directing payment of arrearages, providing remedies in the event of his failure to meet the maintenance obligations, and denying his motion for modification under 15 V.S.A. § 758. Defendant claims the family court erred by (1) considering defendant's subjective intent in making employment choices following an unexpected job termination, (2) referencing his current spouse's income in the context of defendant's ability to meet maintenance obligations to his former spouse, and (3) ordering garnishment according to the terms of a previously issued, and allegedly invalid, family court garnishment order. We affirm.

The parties were divorced in 1993, and

defendant was ordered to pay plaintiff maintenance in the amount of $24,000 per year. This Court affirmed the divorce and maintenance order. See *Clapp v. Clapp*, 163 Vt. 15, 653 A.2d 72 (1994). Pursuant to a stipulation of the parties, the payments were to be made in amounts of $500 on the first of each month and quarterly payments of $4,500 on March 31, June 30, September 30, and December 31.

At the time of the divorce defendant was a partner in a Burlington law firm, with an annual income of between $150,000 and $200,000. On January 1, 1996, the law partnership was converted to a corporation, and defendant became a shareholder. By unanimous vote of the firm's other shareholders, defendant's employment was terminated effective February 1, 1996. Defendant had been advised that other shareholders were concerned about his performance, but he was surprised by his abrupt termination. The court found that he would have preferred to remain with the firm. The value of defendant's interest as a principal in the firm was not settled at the time of his departure.

Following his termination, defendant worked as a sole practitioner for two months. The court found that defendant's efforts to find employment at a salary comparable to his earnings from his old firm "were minimal." In April 1996, he formed a new law firm with two other attorneys. Under his agreement with the firm's new partners, defendant earned $50,000 per year, with no provision for a share of the firm's profits. The court found that defendant and his new wife had a combined income of $83,000 per year.

The court made extensive findings regarding defendant's "sporadic" record of paying spousal maintenance and the contentiousness of the issue between the parties, even after a settlement stipulation in December 1995. Defendant failed to make a $4,500 quarterly payment due March 31, 1996, and thereafter plaintiff filed a motion for contempt. In response defendant moved for modification of the 1993 maintenance order, based on the assertion that his income in the new firm fell considerably below his prior income level.

After a hearing the court found defendant in contempt for a spousal maintenance arrearage of $5,500. The court also found that defendant had not maintained payments on a second mortgage on the marital home, as required under the 1993 order. The court ordered defendant to pay the maintenance and second mortgage arrearages by July 8, 1996 or face incarceration; if the sums were not paid, the court indicated it would enter an order of trustee process, or garnishment, directing that payments be made directly from funds due to defendant for his interest in his former law firm, once the payment amount had been determined.

On the afternoon of July 8, 1996, plaintiff's attorney prepared an affidavit stating that defendant had not made the required payments, and on that basis the court issued a garnishment order the next day. It was later revealed, however, that defendant had actually made the payments late in the day of July 8. There was no dispute of that fact, and thus a mittimus on the garnishment order was not subsequently delivered to defendant.

After a hearing on defendant's modification petition, the court issued an order in November 1996, and an amended order of May 5, 1997, the subject of this appeal. In its May 5, 1997 order the court denied defendant's petition for modification. The grounds for its decision was that, in the wake of his unexpected termination, defendant had shown only "minimal" effort to find employment that would allow him to meet his obligations. The court nonetheless reduced defendant's required biweekly payment to $500, upon which schedule defendant would accrue arrearages of $916 per month. As of

January 2, 1998, defendant was ordered to pay $923 every two weeks in spousal maintenance. The court further required that any arrearages occurring from March 1, 1996 until the date of the "buyout" payment by his former law firm would be subject to the court's garnishment order of July 9, 1996, and that any arrearages accrued from that date were to be paid in full no later than December 31, 1998. Defendant appeals.

## I.

Defendant argues on appeal that the court erroneously denied his motion for modification. He claims the court was wrong to rely on *Giesner v. Giesner*, 319 N.W.2d 718 (Minn. 1982), for the proposition that the court should examine not only the circumstances under which defendant's prior employment terminated, but also defendant's *subjective intent* in choosing to start a new law firm at a reduced salary. The genesis of defendant's argument is our decision in *Lowery v. Lowery*, 156 Vt. 268, 274, 591 A.2d 81, 84-85 (1991), in which we stated:

> Other court, have made adjustments in an existing maintenance order to match the obligor's temporarily changed circumstances. . . . *Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn. 1982) (where new business startup may have resulted in a temporary reduction in income, court should consider, among other alternatives, reduction or deferral of alimony).

Defendant claims that Vermont caselaw does not support examination of a petitioner's subjective intent. He contends that, at a minimum, the court should have given prior warning that defendant's subjective intent would be at issue, that he appeared at the hearing unprepared to present such evidence, and thus the court's findings are unfair and in error.

He specifically challenges (1) the court's finding that his "efforts to find employment at a salary comparable to his earnings from his old firm were minimal"; (2) the court's suggestion that he purposely set his new salary at $50,000, the same amount defendant believed his former spouse earned; and (3) the court's finding that defendant viewed his changed employment circumstances as "an opportunity to rid himself of a burden he never believed he should have had to take on in the first place." We find defendant's claim to be without merit.

Under 15 V.S.A. § 758, "a real, substantial, and unanticipated change of circumstances" must be shown in order for a court to modify spousal maintenance. The burden for showing a change in circumstance is a heavy one, and lies with the party seeking the modification. See *Gil v. Gil*, 151 Vt. 598, 599, 563 A.2d 624, 625 (1989). Vermont cases clearly show that courts may consider the reasons underlying post-divorce employment decisions that reduce an obligor's actual income. See *Shaw v. Shaw*, 162 Vt. 338, 340, 648 A.2d 836, 838 (1994) (a voluntary reduction in income does not constitute a change of circumstances). This inquiry necessarily focuses on — and indeed begins with — the obligor's subjective intent in making the change. See *Cliche v. Cliche*, 140 Vt. 540, 542, 442 A.2d 60, 61-62 (1982) (reduction of alimony not justified where defendant terminated one of his jobs voluntarily because he wanted more time to himself); *Miller v. Miller*, 124 Vt. 76, 81, 197 A.2d 488, 492 (1964) ("Such loss of income, however, the findings make clear, is due to his own volition."); cf. *Kohut v. Kohut*, 164 Vt. 40, 44, 663 A.2d 942, 944-45 (1995) (in award of maintenance, court imputed income at former salary level where defendant voluntarily terminated employment and became underemployed as real estate salesman). Courts in others jurisdictions similarly look to the subjective intent of the party

seeking modification. See *Reece v. Reece*, 470 S.E.2d 148, 151 (Va. Ct. App. 1996) (following unexpected termination of employment, if spousal maintenance obligor's reduced income was product of voluntary underemployment, court would deny modification and instead impute income); *Pope v. Pope*, 559 N.W.2d 192, 196 (Neb. 1997) (petition for modification of alimony would be denied if change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets).

Defendant knew or should have known that he would be required to demonstrate that, after an unexpected termination from his old job, his decision to undertake employment which resulted in a substantial reduction from his previous income was made in good faith and came after a conscientious effort to obtain employment that would have allowed him to meet his maintenance obligation. Inasmuch as the family court applied correct legal principles, it was for the court to weigh the evidence and credibility of the witnesses, and determine if defendant had met his burden. See *Cliche*, 140 Vt. at 541, 442 A.2d at 61 (in modification proceeding, trial court's findings of facts will not be set aside unless, taking the evidence in the light most favorable to the nonmoving party, and excluding the effect of modifying evidence, the findings are clearly erroneous). We find the family court's conclusions well supported by the record.

Defendant argues that the court's findings are contradictory, since the court found on the one hand that he did not act in good faith in forming his new law firm, but also found that the new law firm should, within a relatively short time, afford him an increase in salary that would allow him to meet his spousal maintenance obligations. The supposed contradiction, however, is illusory. The court did not find that defendant intentionally entered a partnership that would curb his annual income. The court found that de-

fendant entered a contract with his new partners that limited his income to $50,000 a year, with no right to a percentage of the firm's profits, while it appeared likely to the court, and it so found, that defendant's earnings could and should rise to the $100,000 level after the new firm's initial startup costs had been met.[1]

More importantly, whatever the court's findings about defendant's subjective intent to abide by the initial maintenance order and to make scheduled payments without the necessity of frequent contempt motions by plaintiff, the court's conclusions were consistent with its specific findings about defendant's ability to pay support at the annual rate of $24,000, based on his earning capacity in his new firm.[2]

------

[1] The court also speculated about defendant's possible employability in the corporate sector, despite the absence of evidence indicating that such employment was readily available or that such a job would offer defendant, an experienced trial lawyer, compensation exceeding that available in private practice. We agree with defendant that there was no evidentiary basis for this speculation by the court, but it is also clear that the court did not rely on this finding for its principal conclusion that defendant had the earning capacity to meet his $24,000 annual maintenance obligation.

[2] We also do not accept defendant's argument that the family court abused its discretion by ordering defendant to continue maintenance payments when to do so would bring defendant's disposable income below that of his former spouse. Maintenance awards incorporate many considerations, and are not to be adjusted on a bare showing that the parties have disparate "take home" income. See *Cliche v. Cliche*, 140 Vt. 540, 542, 442 A.2d 60, 61 (1982) (despite reduced salary and increased living expenses of obligor, and increase salary of obligee, modification not granted because obligor voluntarily changed circumstances).

## II.

Defendant's second argument is that the court erred in finding that he and his current wife "had a combined income of $83,000 per year or $6,916 per month" and thus basing its order in part upon the earnings of defendant's wife. It was proper for the court to consider the husband's present financial obligations, if only to determine "the ability of the spouse from whom maintenance is sought to meet his or her reasonable needs while meeting those of the spouse seeking maintenance." 15 V.S.A. § 752(b)(6). The challenged finding established that defendant did not have unforeseen financial obligations resulting from his new marriage.

The court's opinion does not suggest that its denial of defendant's modification motion was based on the expectation that defendant would be able to pay part of his maintenance obligation from the income of his current wife. Hence, there is no support in the record for defendant's assertion that the court "consider[ed] the new spouse's income and combine[d] it with the obligor's income in order to determine whether or not the obligor's maintenance payments should be modified."

## III.

Defendant argues finally that the May 5, 1997 order for garnishment was an abuse of discretion. He contends that the court's earlier garnishment order, from July 9, 1996, never should have issued because of the mistaken report that defendant failed to make required payments. Defendant claims abuse of discretion in the court's May 5, 1997 order that "[a]ny arrearage in spousal maintenance accrued from March 1, 1996, through the date defendant receives payment from his former law firm, shall be subject to the garnishment order issued by this court on July 9, 1996." We find no error. Garnishment, or "trustee process," allows a judgment creditor to protect her interests by reaching certain obligations due the judgment debtor. See 12 V.S.A. § 3011; V.R.C.P. 4.2; *First Wisconsin Mortgage Trust v. Wyman's, Inc.*, 139 Vt. 350, 353, 428 A.2d 1119, 1121 (1981). While it is not disputed that defendant made the payments called for under the earlier order, that fact does not negate the latter order's effect. The May 5, 1997 order stands as a valid garnishment order in and of itself, securing payment of different obligations than those specified in the earlier order. See *Mazziotti v. Allstate Ins. Co.*, 695 A.2d 1010, 1014 (Conn. 1997) (construction of judgment is question of law with determinative factor being the intent of the court as gathered from all parts of the judgment); *Suffolk County Ass'n of Municipal Employees v. County of Suffolk*, 572 N.Y.S.2d 344, 346 (App. Div. 1991) (judgment must speak as of its date and derive from then-existing facts).

*Affirmed.*