2010 VT 94

# Judy Mayville v. William Mayville

[12 A.3d 500]

No. 09-462

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed October 21, 2010

2

*Mary G. Kirkpatrick* of *Kirkpatrick & Goldsborough, PLLC*, South Burlington, for Plaintiff-Appellee.

*Catherine E. Clark* of *Clark, Werner & Flynn, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Husband, William Mayville, who was recently laid off from his job, seeks to terminate the spousal maintenance payable to his ex-wife, Judy Mayville, pursuant to a 2003 court order. After husband filed a motion to terminate spousal maintenance, the Chittenden Family Court issued an order requiring him to pay $3000 per month — the same amount set forth in the 2003 order — until he stopped receiving unemployment compensation benefits and $1500 per month thereafter. Husband appeals from this order, alleging numerous errors. We affirm.

¶ 2. Husband and wife divorced in 2003, after twenty-seven years of marriage. At the time of the divorce, husband earned more than $100,000 per year working as an information technology manager for IBM. Wife is disabled and has never worked. Pursuant to an agreement made between the parties at the time of their divorce and incorporated into a court order, husband was to pay wife $3000 per month in spousal maintenance until he turned sixty-five years old. The 2003 court order granted wife fifty percent of husband's pension, among other assets, with husband retaining the other fifty percent.

¶ 3. Six years later, in April 2009, husband lost his job with IBM through no fault of his own. He was fifty-nine years old on the date he was laid off and had been with the company since age nineteen — for approximately forty years — working his way into a senior management position despite having only a high school education. He earned $110,000 in 2007 and $126,000 in 2008, including bonuses. Upon being laid off, husband received a severance package that included six months salary — $52,000 — plus health benefits. His income for 2009, including his salary, pension, and unemployment compensation benefits, totaled $135,000; in other words, his income actually increased for 2009, the year in which he was laid off.

¶ 4. Husband currently lives with his new wife, who earns approximately $50,000 annually, and his major assets include a home with $136,000 equity in it and a 401(k) account valued at $150,000. Husband has made little effort to seek new employment since being laid off. He plans to retire from work and live off of

his $3715 monthly pension and his unemployment compensation benefits until they expire. This plan is possible, in part, because his household expenses are reduced as a result of his new wife's contribution to them.

¶ 5. Wife presently lives off of her spousal maintenance and $1405 a month in Social Security benefits. She has never worked, due to her disabilities, and she incurs significant medical expenses. She was sixty-five years old at the time of the modification hearing.

¶ 6. On April 17, 2009, ten days before his position at IBM ended, husband filed a motion to terminate spousal maintenance with the Chittenden Family Court. The court held a preliminary hearing on the motion in June and an evidentiary hearing in October. The court concluded that there had been "no substantial change of circumstances for 2009" in that husband's annual income for that year was actually higher than the income for previous years. The court accordingly ordered husband to pay $3000 in spousal maintenance for November and December 2009. The court further concluded there would be "no substantial change of circumstances during the period for which [he] receive[d] unemployment benefits" either, as "[a]dding up his monthly pension, unemployment payments, imputed income at a minimum wage, full-time job and his wife's contribution to the household income, leaves [him] close to what he had been earning at the time of the final order." The court did, however, conclude that a substantial change of circumstances would occur once husband's unemployment compensation benefits ended. At that point, the court ordered that husband's maintenance obligation be reduced to $1500 per month, until he reached age sixty-five, when it would terminate completely pursuant to the 2003 court order and agreement between the parties.

¶ 7. Husband argues on appeal that the family court erred in concluding that the loss of his job would not result in a "real, substantial, and unanticipated change of circumstances" until his unemployment compensation benefits ran out. See 15 V.S.A. § 758. In particular, husband argues that the court erred by: (1) considering his pension as a source of income; (2) presuming that he could receive unemployment compensation benefits and a full-time minimum-wage income at the same time; (3) considering his new wife's income; (4) failing to consider his increased health insurance expenses; (5) failing to consider wife's improved financial

circumstances; and (6) ruling in a manner inconsistent with reasonableness, fairness, or equity. We address these arguments in turn.

¶ 8. A court may not modify a maintenance order unless it finds that there has been a "real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758. As we have previously held, "[t]he burden for showing a change in circumstances is a heavy one, and lies with the party seeking the modification," in this case, husband. *Wardwell v. Clapp*, 168 Vt. 592, 594, 720 A.2d 862, 864 (1998) (mem.). We evaluate whether a change is substantial "in the context of the surrounding circumstances," *Braun v. Greenblatt*, 2007 VT 53, ¶ 11, 182 Vt. 29, 927 A.2d 782 (quotation omitted), and we will not disturb a trial court's decision on whether to modify spousal maintenance unless "the discretion was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." *Taylor v. Taylor*, 175 Vt. 32, 36, 819 A.2d 684, 688 (2002); accord *Stickney v. Stickney*, 170 Vt. 547, 548-49, 742 A.2d 1228, 1231 (1999) (mem.) ("A court has broad discretion in determining the amount and duration of a maintenance award, and we will set it aside only when there is no reasonable basis to support it."). Our review is therefore "limited to determining whether the family court's exercise of discretion was proper and whether a reasonable basis supports the award." *Golden v. Cooper-Ellis*, 2007 VT 15, ¶ 47, 181 Vt. 359, 924 A.2d 19.

¶ 9. We now turn to husband's various claims of error. Husband first argues that the family court improperly considered his pension as a source of income. As a general matter, although pensions may be viewed as marital assets, "they may also be considered as a source of income upon which an award of spousal maintenance may be based." *Sachs v. Sachs*, 163 Vt. 498, 502-03, 659 A.2d 678, 680 (1995); see C. Marvel, Annotation, *Pension of Husband as Resource Which Court May Consider in Determining Amount of Alimony*, 22 A.L.R.2d 1421, § 2 (1952) ("As a general proposition, it has been held or stated in numerous cases that the pension of a husband may properly be considered as a resource in determining the amount of alimony to be awarded to the wife."). Husband maintains, however, that pensions must be considered as *either* a source of income or a marital asset, but not both. Because the family court divided husband's pension between the two

parties at the time of divorce, husband argues that the court erred in taking into account his income from the pension in determining whether to terminate maintenance. In his view, after the termination of unemployment compensation benefits, he must be treated as if he has no income available to pay maintenance.

¶ 10. We note at the outset that we can find no support for husband's theory in the statutes governing maintenance awards or in our general treatment of income-producing assets. The statutes governing maintenance authorize the court to award such amount "as the court deems just" considering "all relevant factors," including the "property apportioned to the [obligee]," and "the ability of the [obligor] . . . to meet his or her reasonable needs while meeting those of the spouse seeking maintenance." 15 V.S.A. § 752(b). Nothing in the language suggests income from marital assets cannot be considered in determining ability of the obligor spouse to pay maintenance and the amount of such maintenance. Consistent with the statutory language, we have routinely held that in determining the amount of maintenance, the family court can consider the income available to the obligor from assets distributed as part of the property award. See, e.g., *Golden*, 2007 VT 15, ¶ 53 (holding that husband's stock options could be expected to generate income and that "[t]his income must be considered in determining an appropriate maintenance award"); *Kasser v. Kasser*, 2006 VT 2, ¶¶ 11-14, 179 Vt. 259, 895 A.2d 134 (affirming trial court in awarding hotel business to husband and taking into account income derived from that business in awarding maintenance); *Root v. Root*, 2005 VT 93, ¶ 4, 178 Vt. 634, 882 A.2d 1202 (mem.) (noting that husband was ordered to pay maintenance specifically from income derived from rental properties). Under our precedents, the issue is simply whether one party has a need for maintenance and whether the other party has the ability to pay maintenance.

¶ 11. We see no obvious rationale for distinguishing pension income from this general rule. A pension is just another type of income-producing asset. See, e.g., *In re Marriage of Haney*, 882 P.2d 497, 499 (Mont. 1994); *Rattee v. Rattee*, 767 A.2d 415, 419 (N.H. 2001). Pension income is therefore "always an important factor in determining whether alimony should be paid and how much either spouse should receive. Any source of income is material to such a determination." G. Blumberg, *Marital*

*Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis,* ·33 UCLA L. Rev. 1250, 1264 n.60 (1986). It was proper, then, for the family court to consider husband's portion of his pension as a source of income, for "[t]hat is his money, and it is therefore . . . a resource that he has from which to pay [maintenance]." *Riley v. Riley,* 571 A.2d 1261, 1265 (Md. Ct. Spec. App. 1990).

¶ 12. In reaching this conclusion, we recognize that a majority of courts, but not all, have reached a similar conclusion on this issue. See National Legal Research Group, Inc., *Update on Double Counting,* 14 No. 5 Equitable Distribution J. 49 (May 1997); see, e.g., *In re Marriage of White,* 237 Cal. Rptr. 764, 767-68 (Ct. App. 1987); *Krafick v. Krafick,* 663 A.2d 365, 375 n.26 (Conn. 1995); *Acker v. Acker,* 904 So. 2d 384, 388 (Fla. 2005); *Riley,* 571 A.2d at 1264; *Zubick v. Zubick,* No. 04-P-512, 2005 WL 1573690, at *4 (Mass. App. Ct. July 6, 2005); *Moreno v. Moreno,* 480 S.E.2d 792, 799 (Va. Ct. App. 1997). Husband's argument is based on a "double-dipping" theory that has been widely used by litigants and adopted by a small minority of courts. See, e.g., *Lee v. Lee,* 775 N.W.2d 631, 640 (Minn. 2009); *Innes v. Innes,* 569 A.2d 770, 775 (N.J. 1990); *Kronforst v. Kronforst,* 123 N.W.2d 528, 534 (Wis. 1963); see generally National Legal Research Group, Inc., *supra.* The basic premise of this theory is that "it [would] be inequitable for [a party] to be able to include [the other party's] pension income *twice* for [his or] her benefit, first for a share of equitable distribution, and second, for inclusion in [the other party's] cash flow for determination of an alimony base." *D'Oro v. D'Oro,* 454 A.2d 915, 916 (N.J. Super. Ct. Ch. Div. 1982). We note, however, that some of the courts in the minority hold so because of an explicit controlling statute. See *Innes,* 569 A.2d at 775 ("The plain language of the pertinent [statute] provides that income from pension benefits that have been treated as an asset for equitable distribution purposes . . . is not to be considered in determining alimony.").[1]

---

[1] Furthermore, courts that follow the minority rule have had to face the inequities that "[a]n absolute bar against double counting can create . . . , especially where the financial situations of the divorced spouses become drastically different. These inequities have caused some courts to refine their rule and carve out exceptions, persuaded others to modify their rule, and prompted at least one jurisdiction to execute an apparent about-face on the issue." National Legal Research Group,

¶ 13. We find nothing inequitable about taking into account the income that husband presently receives from his pension in determining whether to modify the maintenance payable to wife. We agree with the American Law Institute's *Principles of the Law of Family Dissolution*, which concludes that "[u]nder prevailing law in which [maintenance] is largely need-based, the double-dipping concern is unfounded." American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 5.04, reporter's notes, cmt. f (2002). Consideration of husband's pension "would be improper only to the extent that any portion of the pension assigned to the nonemployee spouse was counted in determining the employee spouse's resources for purposes of [maintenance]." *Krafick*, 663 A.2d at 375 n.26. Such a practice would plainly be inequitable, as it would allocate, for the purposes of determining the obligor's maintenance base, assets that did not in fact belong to the obligor. See *Riley*, 571 A.2d at 1264 ("It is true . . . that, in awarding and setting the terms of alimony, the court cannot properly consider as a resource of the payor spouse property or income that the spouse does not have."). That is not the situation we have here. Here, the family court considered only the portion of husband's pension that *he* received after the property division in determining whether he could afford to pay maintenance; the court did not allocate to husband's maintenance base the portion of the pension awarded to wife.

¶ 14. In conclusion, we adhere to the majority rule that in considering the amount of maintenance to award, or whether to modify a maintenance order, the family court may include as income to the obligor any income derived from assets, including a pension, awarded to the obligor in the property distribution. The family court properly applied that rule here.

¶ 15. Husband next claims that the family court erroneously presumed that he would "simultaneously be receiving full unemployment benefits and full time income at minimum wage." Although we agree that unemployment is a prerequisite to

*supra.* For instance, in *Cook v. Cook*, the Supreme Court of Wisconsin concluded that in some cases it is "inappropriate to enforce an absolute bar against counting a pension in the property division and in the maintenance or support determination," as "[s]uch an inflexible rule runs counter to the equitable nature of these determinations." 560 N.W.2d 246, 252 (Wis. 1997).

receiving unemployment compensation benefits, 21 V.S.A. § 1343(a), we believe that the family court's order does not impute minimum wage income and count unemployment compensation benefits "simultaneously," as husband alleges. In drawing this conclusion, we acknowledge that the court's language was ambiguous in determining husband's income and expenses for the period after the severance wages ran out, but before the unemployment compensation benefits ran out. In part, the ambiguity reflects the uncertainty about how long the unemployment compensation benefits would continue and, particularly, whether there was *any* period in which they would continue after the severance pay terminated[2] Moreover, as the court found, husband's income actually rose in 2009, and there was uncertainty over the appropriate period for expending that increased income. Under the circumstances, we conclude that the court estimated husband's expected income based on how long he likely would continue to receive unemployment compensation and then imputed minimum wage for the period *after* unemployment benefits ceased. This was not an abuse of discretion.

¶ 16. Husband also alleges that the family court erred in considering his current wife's income in determining his ability to pay spousal maintenance. Again, we do not disagree with husband's legal argument in the abstract, but we do not agree with its application to this case. When a maintenance obligor remarries, a court may not impute the income of the new spouse to the obligor for the purposes of calculating the amount of the obligor's income that is available to pay maintenance. See *Wardwell*, 168 Vt. at 596, 720 A.2d at 865 (indicating that trial court may not deny motion to modify maintenance award "based on the expectation that [husband] would be able to pay part of his maintenance obligation from the income of his current wife"); see also *In re Marriage of Bowles*, 916 P.2d 615, 618 (Colo. App. 1995); *Moore v. Moore*, 2009 SD 16, ¶ 46, 763 N.W.2d 536. We have previously held, however, that a trial court may properly consider the earnings of a new spouse to determine "the ability of the spouse from whom maintenance is sought to meet his or her reasonable needs while meeting those of the spouse seeking maintenance." 15

---

[2] Husband testified that his unemployment compensation benefits would terminate two weeks after the hearing but that he could apply for extended benefits, and there was a "good chance" he would receive them.

V.S.A. § 752(b)(6); see *Wardwell*, 168 Vt. at 596, 720 A.2d at 865 (holding that, in assessing whether to modify maintenance award, trial court properly considered successor spouse's income to determine husband's overall financial situation). In other words, the court may consider the effect that the new spouse's income has on the needs and expenses of the obligor. See *Sowers v. Sowers*, No. 114, 1988 WL 113311, at *2 (Del. Oct. 3, 1988) (approving of family court's conclusion in alimony modification proceeding that, though new spouse's income "cannot figure in the alimony allotment, it does help to defray the [h]usband's own household expenses"); *Harris v. Harris*, 656 S.E.2d 316, 321-22 (N.C. Ct. App. 2008) ("[W]here a party's new spouse shares responsibility for the party's expenses and needs, it is proper for the court to consider income received by the new spouse in weighing the party's necessary and reasonable expenses and debts against his financial ability to pay." (emphasis and quotation omitted)). This rule of law is consistent with our rulings in cases where the obligee's expenses are reduced because of remarriage. See *Miller v. Miller*, 2005 VT 122, ¶¶ 17, 20, 179 Vt. 147, 892 A.2d 175 (holding that remarriage of obligee spouse will allow modification of maintenance order only if it substantially reduces need for maintenance, but recognizing "that sharing of household expenses may produce some measure of financial improvement because some of those expenses are not directly proportional to the number of household occupants"). Here, the family court did not impute the current wife's salary to husband or require the current wife to pay part of her husband's maintenance obligations. It instead credited only her "contribution to the household income"; that is, it determined the effect of her income on husband's expenses and ability to support himself while paying maintenance. We therefore find no abuse of discretion.

¶ 17. Husband next argues that the family court abused its discretion by failing to consider the increase in the cost of his health insurance after his termination from IBM. He testified at the hearing that he now pays $370 per month for health insurance benefits that have a $2500 deductible. While employed at IBM, he paid $281 per month for health insurance. This issue must be viewed in light of husband's motion, which requested termination of maintenance, not incremental reduction of the amount. In light of the motion, the family court did not separately analyze instances where a party's expenses went up in relatively small

amounts in relation to the overall financial picture. Thus, the court also did not discuss the unreimbursed medical bills of wife, which caused her to incur about $10,000 in credit card debt. Under these circumstances, the family court apparently did not find the difference in husband's premiums, or coverage, to constitute a substantial change of circumstances. See 15 V.S.A. § 758. As we stated at the outset of this opinion, we review changed circumstances determinations only for abuse of discretion. *Taylor*, 175 Vt. at 36, 819 A.2d at 688. We find no abuse of discretion.

¶ 18. Husband's fifth claim of error is that the family court failed to consider the change in wife's financial circumstances. At the time of the divorce, husband asserts, wife had no income, whereas at the time of the hearing, she was receiving approximately $1400 per month in Social Security benefits. We agree that a significant change in the finances of either spouse can warrant modification due to a real, substantial, and unanticipated change in circumstances. See *Miller*, 2005 VT 122, ¶ 16. We will not automatically reduce maintenance payable to an obligee, however, merely because of that spouse's improved circumstances. See *Ellis v. Ellis*, 135 Vt. 83, 86-87, 370 A.2d 200, 202 (1977) ("It should . . . be considered that it would be poor policy to reward efforts of the former wife to improve her property or situation with a corresponding reduction in alimony benefits not otherwise warranted. The destruction of admirable incentive is quite apparent.").

¶ 19. In this case, we do not have to address whether the change in wife's financial circumstances was substantial because we cannot conclude that it was unanticipated. See *Miller*, 2005 VT 122, ¶ 21 (explaining that economic benefit of cohabitation with new partner "must be 'unanticipated' to justify a reduction of maintenance"). The increase in wife's income came from Social Security benefits based on the income of her first husband. Although wife had not claimed these benefits at the time of the divorce, the parties were aware of their availability. In fact, husband testified in the modification hearing that, when they were still married, he and wife discussed her getting Social Security benefits in the future. The receipt of the anticipated benefits cannot be the grounds for a change of circumstances that meets the statutory requirement.

¶ 20. For a similar reason, we reject husband's argument that the family court should have considered that wife's ongoing

healthcare costs were reduced when she enrolled in Medicare. Her age-based entitlement for Medicare cannot be considered to be unanticipated. Moreover, in this instance, wife has significant uncovered healthcare expenses because of her health condition.

¶ 21. Finally, husband argues that the court's decision fails a test of "reasonableness, fairness or equity" because husband has suffered a major decline in his income, wife's income has increased since the divorce because of the receipt of Social Security benefits, and husband is still required to pay maintenance. In responding to husband's general attack on the family court order, we note that the court's response was induced by the nature and timing of husband's motion. Husband requested termination, not reduction, of his maintenance obligation and wanted immediate relief. He filed his motion in advance of any actual decrease in his income, an action we encourage to give the family court an opportunity to address the motion before a financial crisis develops. The family court was immediately responsive to the motion, and, as a result, found that as of the time of the hearing, husband had not yet experienced a substantial change in circumstances. Indeed, as noted above, husband's income for the year 2009 was greater than what he had been earning in previous years, although it was clear that it would decline in the future.

¶ 22. This type of case presents difficult challenges to the family court because the moving party wants immediate action, but the financial circumstances of the parties are still in flux and have not reached a stable state, if such a state is ever possible. We encourage parties to raise changes in circumstances as soon as it is clear that they are occurring, but they must understand that the family court cannot speculate what the future will bring. See *Taylor*, 175 Vt. at 36, 819 A.2d at 688 (explaining that court has no jurisdiction to modify maintenance order when "the required change has not occurred"); *DeKoeyer v. DeKoeyer*, 146 Vt. 493, 495-96, 507 A.2d 962, 964 (1986) (court cannot consider obligor's speculation regarding his future economic circumstances; it must consider "only [the obligor's] condition contemporaneous with the hearing and his condition at the time of the divorce").

¶ 23. At the same time, we emphasize that family court time is a precious resource that is already under great pressure, and the court cannot respond effectively to every change of circumstances that will inevitably occur. Thus, maintenance orders

"necessarily involve some predictions of the future circumstances of the parties," *Taylor*, 175 Vt. at 39, 819 A.2d at 690, to minimize the need to return to court for modification. For this reason, the statute requires changes of circumstances to be "real, substantial, and unanticipated." 15 V.S.A. § 758.

¶ 24. We conclude that the family court reached an appropriate balance in this case. It denied husband's request to totally terminate his maintenance obligation. For the reasons stated above, we affirm that decision. The court went on to respond to the future changes in husband's financial circumstances that were sufficiently certain so the court did not have to speculate on their effect. Appropriately, it reduced husband's maintenance obligation to reflect the upcoming change in his financial circumstances. It reached a pragmatic result that minimized the need for the parties to return to court in the future. See *Golden*, 2007 VT 15, ¶ 54 (rejecting argument that stock options should not be counted as income because there would be a year's delay before husband could exercise these options, and explaining "[t]his argument calls for a fine tuning of maintenance awards that is unrealistic and would keep the parties in court forever.").

¶ 25. The basis of the original award is essentially unchanged. Husband is highly skilled and able to participate in the workforce, should he so choose. Wife is disabled and, aside from the maintenance award, lives exclusively on Social Security benefits and has no ability to improve her financial circumstances through employment. Although husband's unemployment was unanticipated, he remains in the better situation to improve his financial position. It is husband's capacity to earn income, and only to a lesser degree the actual income he produced, that is the foundation of the original maintenance award.

*Affirmed.*