VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-230



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2025

Brian Clifford\* v. Shauna Clifford

} APPEALED FROM:
}
} Superior Court, Caledonia Unit,
} Family Division
} CASE NO. 21-DM-02350
Trial Judge: Benjamin D. Battles

In the above-entitled cause, the Clerk will enter:

Husband appeals from the parties' final divorce order.  He argues that the trial court erred in awarding spousal maintenance and dividing the marital estate.  We agree that the court, on this record, abused its discretion in declining to treat wife's pension rights as a marital asset subject to distribution.  We therefore reverse and remand.

The final hearing in this matter was held in May 2024.  The court heard testimony from husband and wife and admitted numerous exhibits.  It issued its final order and decree of divorce in June 2024.  Husband filed a timely motion to alter or amend on several grounds.  As discussed below in relevant part, the court granted the motion in part and issued an amended final order in July 2024.  The amended order included the following factual findings.

Husband and wife married in July 1995 and separated in September 2021 after approximately twenty-six years of marriage.  They had no children.

The parties met in 1992.  Beginning around 1994, they lived in husband's mobile home near wife's grandparents' dairy farm in Alburgh.  During this time, husband worked as a crane operator and helped on the farm, while wife was employed by the State Agency of Transportation (AOT).  In 2000, the parties purchased property in St. Johnsbury for $19,000.  To help fund this purchase, they sold the mobile home husband brought to the marriage.

On the St. Johnsbury property, the parties eventually built a house, woodshed, sugar house, chicken coop, and barn.  Husband and his father did the construction themselves.  Husband's father worked on the parties' home for free.  While the marital home was being built, husband also worked for his father, who is an electrical contractor.  Wife worked full-time for AOT during this time, but she helped with the painting and staining and oversaw the financial aspects of the project, including paying for materials and the couple's living expenses.

After the parties' home was complete, husband resumed working as a crane operator. He also worked for his father regularly. Wife continued working for AOT, with increasing levels of responsibility.

In 2003 or 2004, with wife's encouragement, husband started his own crane business. Husband ran the day-to-day business and operated the crane, while wife developed the business plan and kept the company's books. The company was profitable for several years, but did not fare well following the 2008 economic recession. The company was sold in 2011, and after debts and taxes, the parties netted approximately $100,000.

Thereafter, husband continued working for his father. He also helped family members with haying. At times, he sugared and raised chickens on the parties' property, earning some small profits from selling maple syrup and eggs.

Throughout the marriage, wife handled nearly all of the cooking, cleaning, and other domestic chores for the family, with the exception of a brief period in which she was seriously ill and husband assumed these responsibilities. Husband was mostly responsible for other labor on the property, including building, renovating, sugaring, and tending to the chickens.

Financial concerns created stress for the parties. While wife's salary consistently increased during the marriage, husband's earnings declined—particularly after he stopped working for his father as frequently as he once had. In 2018, the parties' camper was repossessed. To ease the financial burden on the family, husband applied for social-security benefits at age sixty-two, despite the penalty. Wife continued working for AOT despite becoming eligible to retire.

After the parties separated in September 2021, husband remained in the marital home and wife moved in with her sister in Newbury. The parties' relationship was cordial until April 2022, when a meeting at the marital home to divide personal property devolved into a physical dispute and husband forced wife out of the house. Wife was extremely upset and felt that she had been manhandled by husband. Immediately after this incident, she learned that her mother—who had been ill—was nearing death. Wife asserted that upon learning what had happened, her mother decided to disinherit wife from receiving an interest in two pieces of real estate, a house in Sheldon and a summer camp in Alburgh. Wife's sister, acting as her mother's power of attorney, finalized paperwork transferring wife's interests in these properties to her siblings while wife's mother was unconscious hours before she died.

The marital home was sold for $310,000. After paying the outstanding mortgage debt and closing costs and expenses, the parties received $193,709.56. Husband sold several items of jointly owned property at auction and received approximately $6,446.50, which he retained.

The parties also own land in Lyndon valued at $28,000 and land in Alburgh valued at $35,000. Following the sale of the parties' St. Johnsbury home, husband moved to the Lyndon property, where he currently lives in a camper and plans to build a residence. Wife continued to live with her sister, paying $300 in monthly rent and sharing household expenses, although she hoped to move out after the divorce was finalized.

The marital estate included various other property, including several vehicles, maple sugaring equipment, firearms, jewelry, a camper, and a tractor. The parties owed debts on three vehicles and also had credit card debt totaling $15,732.25.

At the time of the final hearing, husband was sixty-five and wife was fifty-six. Both were aging, but generally in good health. On balance, husband and wife were equal partners throughout their marriage. While their respective financial contributions varied over the years, both contributed substantially. Wife contributed significant labor as a homemaker in addition to her full-time career, and husband contributed significant labor to wife's family and to building and maintaining the marital home and property.

Husband has a high-school diploma, receives social security retirement benefits, and is on Medicare. After his Medicare premiums are deducted from his social security benefit, he receives $1138 per month. He works approximately thirty hours per week as a driver for a car dealership, earning $15 an hour. In 2023, he earned $13,528 from this work. On two occasions, husband has earned additional income helping with auctions. Husband has a variety of skills and could find additional work if he chose to do so. Husband had an IRA account with a balance of approximately $3,565.28.

Wife obtained an associate's degree prior to the marriage. During the marriage, she earned a bachelor's degree, which was paid for through her state employment. She is currently a district transportation administrator and earns $126,838.40 per year, and her earning capacity significantly outweighs husband's.

Through her state employment, wife had a deferred-compensation account with a balance of approximately $205,785.81 and is enrolled in a defined-benefit plan with a maximum retirement benefit of $4,947.26 per month. She also had two IRA accounts totaling around $33,623.51. Wife would retire if she felt financially able to do so.

In dividing the marital property, the court rejected husband's request to credit wife with having received the value of her former interests in her mother's home in Sheldon and camp in Alburgh. It found that wife did not receive these interests due to her sister's actions—acting as her mother's power of attorney—on the day of her mother's death. However, it also found that wife and her family intentionally disinherited wife to reduce the value of the marital estate by at least $200,000 and prejudice husband, and that wife was unlikely to suffer comparable prejudice given her close personal and financial ties to her sister. This, the court concluded, warranted an adjustment to the division of property in favor of husband. It indicated that it would therefore award him 51% of the marital estate.

The court concluded that husband was entitled to half of the value of wife's deferred-compensation plan earned during the marriage, or $75,140.75. However, it declined to award husband a portion of wife's defined-benefit plan in light of its conclusion that he was entitled to spousal maintenance. On that point, the court concluded that husband was unable to provide for his reasonable needs and support the standard of living he enjoyed based on his income alone, and that wife had sufficient income to meet her own reasonable expenses while paying spousal maintenance. In calculating wife's gross monthly income, the court relied on wife's base salary and did not include overtime compensation she recently earned as a result of having to respond to unpredictable emergency situations. The court concluded that husband was entitled to a maintenance award of $1800 per month for a ten-year period. However, it found wife's proposal to award husband a greater share of the marital estate to reduce the amount of ongoing maintenance payments reasonable. It therefore awarded husband an additional $100,000 in value from the marital estate after the 51/49 split, reducing wife's maintenance obligation to $967 per month.

On appeal, husband argues that the family court erred in: (1) declining to award him a portion of wife's defined-benefit retirement plan; (2) rejecting his contention that the value of the assets from which wife was disinherited should be included as part of the marital estate; (3) valuing and distributing jewelry owned by the parties; and (4) failing to consider husband's age and limited job prospects in comparison with wife's younger age, more marketable skills, and overtime income in diving the marital assets and awarding spousal maintenance. Because we conclude that husband's first argument is meritorious, we vacate the court's property distribution and interrelated spousal-maintenance award and remand for further proceedings. As a result, we do not reach the remaining issues raised by husband on appeal.

In reviewing the property-division and spousal-maintenance awards in a divorce proceeding, "we look to whether the [court] has adequately explained the underlying rationale for its decision, which we will not disturb absent a showing that the court abused its discretion." Jaro v. Jaro, 2018 VT 105, ¶ 13, 208 Vt. 391 (quotation omitted). "The court has considerable discretion in ruling on these matters, and the party seeking to overturn a property and maintenance award must show that there is no reasonable basis to support it." Bell v. Bell, 162 Vt. 192, 197-98 (1994).

Husband argues that the court abused its discretion in failing to award him a portion of wife's defined-benefit award because its conclusion conflicted with its findings and inappropriately conflated its analyses of property distribution and spousal maintenance.

In its initial final order issued in June 2024, the court observed that wife was eligible to receive a significant amount of deferred-compensation and retirement benefits from the state, the majority of which were accrued during the parties' twenty-six years of marriage. It concluded that husband was therefore "entitled to half the present value of the retirement assets that were earned during the marriage, or 37% of the total present value of those assets." As noted above, it awarded husband 37% of the current value of wife's deferred compensation package, or $75,140.75. However, it declined to award husband a percentage of wife's defined-benefit award in light of its award of spousal maintenance.

Husband moved to alter or amend the judgment, arguing, among other things, that the court had concluded that he was entitled to 37% of the total value of both of wife's state retirement assets, but instead awarded the entirety of the defined-benefit asset to wife. The court explained that its intent was "to award husband 37% of the deferred compensation asset and to not award husband any of the defined benefit asset in lieu of the court's award of spousal maintenance." It issued an amended final order clarifying this intent but declined to reconsider its conclusion. The amended order continued to provide that the majority of wife's deferred-compensation and retirement benefits were earned during the marriage. However, it held that husband was entitled to 37% of the deferred-compensation package value while declining to award him any portion of the defined-benefit award on the same grounds set forth in the original order. Neither asset was included in the court's table valuing and distributing the marital property on a 51/49 basis, although the final order separately awarded husband $75,140.75 of wife's deferred-compensation package. No aspect of the maintenance analysis reflects that it considered wife's post-retirement pension income in determining the appropriate amount and duration of the maintenance award.

As wife testified at the final hearing, her defined-benefit award is essentially a pension. "[W]e have held that pension rights acquired by a party to a divorce during the course of the marriage constitute marital property and are subject to equitable distribution along with other

4

assets." Milligan v. Milligan, 158 Vt. 436, 439 (1992). This is because the value of such benefits are "either deposited at the party's option, or by the employer in lieu of higher compensation which would other have enhanced the marital standard of living." Id. (quotation and ellipses omitted); see McDermott v. McDermott, 150 Vt. 258, 260 (1988) ("Retirement pension rights are the result of direct or indirect efforts expended by one or both parties to the marriage . . . . Each spouse [has] the same expectation of future enjoyment with the knowledge that the pensioner need only survive to receive it." (quotation omitted)). Although the court has discretion in distributing a pension, it "is still, however, required to consider the property as part of the marital estate and to explain the basis for its disposition." Hayden v. Hayden, 2003 VT 97, ¶¶ 8-9, 176 Vt. 52.

However, we have also recognized that "[b]ecause deferral of benefits is the keynote of most retirement pension plans, disposition of such assets upon divorce is particularly problematic." McDermott, 150 Vt. at 260. Where pension rights have vested but not yet matured, courts normally use one of two basic methods to divide them on divorce. Id. In courts that use the immediate-offset approach, "the pension benefits are assigned a present value and distributed along with the other marital assets." Id. Alternatively, other courts choose to retain jurisdiction and "apportion the pension benefits only when they mature or when payment begins." Id. at 261. Under either approach, however, "the court must determine what portion of the entitlement was acquired during the marriage . . . by factoring in the so-called 'coverture fraction.' " Id. Further complicating the matter, while "pensions may be considered as marital assets . . . they may also be considered as a source of income upon which an award of spousal maintenance may be based." Sachs. v. Sachs, 163 Vt. 498, 502-03 (1995). Because a pension "provides an income stream after retirement . . . its primary purpose is the same as an award of maintenance," and pension income is " 'always an important factor in determining whether [maintenance] should be paid and how much either spouse should receive.' " Molleur v. Molleur, 2012 VT 16, ¶ 6, 191 Vt. 202 (quoting Mayville v. Mayville, 2010 VT 94, ¶¶ 9-11, 189 Vt. 1 (observing that "in determining the amount of maintenance, the family court can consider the income available to the obligor from assets distributed as part of the property award" and concluding that pension could therefore be considered as both source of income and marital asset)).

Here, the court essentially exempted wife's pension rights from the marital estate, even though it found that the majority of those rights accrued during the parties' lengthy marriage: while it concluded that husband was entitled to approximately 51% of the marital estate, wife's pension rights were not included in the overall value thus distributed. And although the court provided for husband to receive a separate distribution of a portion of wife's deferred compensation that was earned during the marriage, it made no such provision for the pension. Instead, citing 15 V.S.A. § 751(b)(7), the court simply explained that it was not awarding husband any portion of the pension because it was awarding maintenance. It is true that under § 751(b)(7), the court may consider "[w]hether the property settlement is in lieu of or in addition to maintenance."

However, the court's decision to exclude wife's pension from the marital estate— notwithstanding that a significant portion of it was earned during the parties' long marriage—is not adequately supported by its conclusion that husband was entitled to an award of spousal maintenance on entirely separate grounds. See, e.g., Scott v. Scott, 155 Vt. 465, 472 (1990) (noting that consideration of only single 15 V.S.A. § 751(b) factor in distributing asset, absent broader analysis, would constitute abuse of discretion). Nor can we discern any other basis for the court's conclusion in its broader analysis. See Jakab v. Jakab, 163 Vt. 575, 585 (1995)

5

(explaining that while court "need not specify the weight given to each factor" in dividing marital property, it must "provide a clear statement as to what was decided and why"). As noted above, in awarding maintenance the court considered only wife's current income from her employment, not the income she would receive from her pension after retirement.

As a result, we conclude that the court abused its discretion in effectively excluding wife's pension from distribution as a marital asset.[*] See Hayden, 2003 VT 97, ¶¶ 8-9 (explaining that family division "erred when it failed to consider the entire monetary value of the retirement accounts at the time of the final hearing as assets to be distributed between the parties"). We therefore reverse the court's property distribution. Because its award of spousal maintenance was closely related, it must also be vacated to allow the trial court the ability to revise it if necessary. See, e.g., Downs v. Downs, 154 Vt. 161, 168 (1990) ("[B]ecause the property division and maintenance award are so closely related, the property division must be vacated in order to allow the trial court leave to revise it if necessary." (citation omitted)). We therefore reach none of husband's remaining challenges to either award.

The court's property-division and spousal-maintenance awards are vacated, and the matter remanded for further proceedings consistent with this opinion.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

---

[*] Wife points out that below, husband did not request an award from wife's defined-benefit plan, observing that he would be unable to access those funds until wife elected to retire. To the extent wife thus suggests that husband therefore failed to preserve this issue for appeal, we disagree. In making this argument, husband was essentially requesting that the court apply the offset approach in distributing the pension. See McDermott, 150 Vt. at 260 ("The term 'offset' denotes the common practice of awarding the undivided pension rights to the employee and awarding other marital property to the employee's spouse."). His request did not serve as a waiver of any claim that the pension should have been included in the marital estate.

6