## Dorothy M. Shaw v. Normand J. Shaw

[648 A.2d 836]

No. 93-399

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed July 8, 1994

*John C. Gravel* of *Bauer, Anderson, Gravel & Abare*, Burlington, for Plaintiff-Appellee.

*John J. Bergeron* and *Norman C. Smith* of *Bergeron, Paradis, Fitzpatrick & Smith*, Burlington, for Defendant-Appellant.

**Gibson, J.** Husband appeals from an order of the Chittenden Family Court denying his motion for termination of rehabilitative maintenance, but adjusting the payment schedule in light of his new employment and lower income. We affirm.

The parties were divorced in 1991, pursuant to a stipulation providing that husband would pay wife $500 per month for a period of ten years as rehabilitative maintenance. Husband was then earning $44,000 a year at IBM, where he had been employed for twenty-seven years.

About ten months after the divorce, husband was fired from his job, due in part at least to his unauthorized purchase of a pickup truck from an IBM vendor about eight years before the divorce. Husband was unemployed for about nine months, during which time the court granted his motion to suspend maintenance payments. After he obtained a job as a car salesman, wife moved to enforce the payment of maintenance, and husband moved to modify the original order on grounds that he could not afford to make the required payments.

At the time of the hearing on the motions, husband had an average weekly gross income of $278, or about $1,200 per month. He testified that he could not afford to live on his own, and was living with his parents, paying room and board. At the time of the hearing, wife had a monthly income of approximately $1,438, consisting of $836 in unemployment compensation, $452 for taking care of a granddaughter, and about $150 from a part-time sales job.

The court found that husband could not meet a $500-per-month payment obligation and ordered as follows:

> As of this date, the defendant is current in his payments, not counting the period during which his payments have been suspended. The plaintiff agrees that he has paid $7,500 to date, and we so find.
>
> We decline to modify his maintenance obligation. He was fired from IBM for wrongdoing of a serious nature. One who causes himself to lose his job cannot, in this court at least, walk away from a maintenance obligation. His obligation is for $500 per month for 10 years. That order . . . shall remain in full force and effect. However, the defendant's obligation will remain suspended until he earns $1000/month. All net earnings over $1,000 per month shall be paid toward his maintenance obligation ($60,000, less the amounts paid to date) until the full maintenance obligation is paid in full.

This appeal followed.

■ Husband argues that the trial court erred in declining to vacate his maintenance obligation because it found that he was fired for "wrongdoing of a serious nature." According to husband, the court ruled, in effect, that he had become unemployed voluntarily and was therefore not eligible to seek modification. Voluntary termination of employment without good reason by an obligor spouse will disqualify the spouse for modification. *Jacobs v. Jacobs*, 144 Vt. 124, 127, 473 A.2d 1165, 1167 (1984). Wrongdoing that results in diminished income may fall within the category of voluntary termination of employment and bar modification of maintenance on grounds of changed circumstances. See, e.g., *Waskin v. Waskin*, 484 So. 2d 1277, 1278–79 (Fla. Dist. Ct. App. 1986) (modification not warranted where adverse impact on former husband's financial condition was caused by publicity and expense of defending against criminal charges resulting from voluntary act of seeking to hire someone to murder former wife); *Noddin v. Noddin*, 455 A.2d 1051, 1053–54 (N.H. 1983) (modification not warranted where husband was fired for stealing trade secrets from employer).

■ We agree with husband that the wrongdoing in this case would not support a conclusion that his loss of employment was voluntary. The firing came after the divorce, but was triggered by events that had occurred eight years earlier. There was no evidence that, at the time of the divorce, either party had any reason to believe husband would lose his job because of his prior actions.

Wife contends that because husband was under investigation a year before the divorce for alleged criminal activities, the subsequent termination was not unanticipated within the meaning of 15 V.S.A. § 758. She contends that "the facts as found by the trial court" reflect that the termination was anticipated, and points to husband's testimony that the parties had discussed the possibility of his losing his job as a result of the investigation. But the criminal investigation ended before the parties entered into their stipulation, and the testimony does not suggest that the amount of maintenance determined through negotiation was affected in any way by the possibility of a later job loss. Cf. *Chaney v. Chaney*, 699 P.2d 398, 401–02 (Ariz. Ct. App. 1985) (though future retirement was contemplated when decree issued, date was speculative and did not bar later modification); *Lambertz v. Lambertz*, 375 N.W.2d 645, 646 (S.D. 1985) (though trial court was aware that husband might retire after decree issued, evidence was speculative and did not bar modification based on substantial reduction in income). Wife in fact concedes that there

were several reasons for husband's termination and that it was not possible to determine that the sole reason was the unauthorized purchase of the vehicle.

■ Nevertheless, despite declining to vacate the maintenance obligation entirely, the court did adjust the payment schedule in accordance with husband's current ability to pay. See *Gil v. Gil*, 151 Vt. 598, 599, 563 A.2d 624, 625 (1989). Husband's total obligation was not reduced, but the change in the payment conditions, particularly the sheltering of the first $1,000 of his monthly income, was significant. As of the date of the hearing, husband had an average monthly gross income of about $1,200 per month. Based on these figures, he would be obligated to pay $200, rather than $500, to wife each month—a significant improvement in the amount remaining for his own monthly expenses.

Husband has not demonstrated that the court erred in declining to eliminate his maintenance obligation entirely. The evidence at the modification hearing was consistent with a significant future earning capacity for husband, despite the limited potential in his present occupation. See *Mancini v. Mancini*, 143 Vt. 235, 240, 465 A.2d 272, 275 (1983) (though attempts to find higher paying job had been unavailing, evidence did not indicate that husband's earning capacity had diminished); cf. *Nelson v. Nelson*, 371 N.W.2d 19, 22 (Minn. Ct. App. 1985) (despite involuntary retirement, husband still had burden of demonstrating substantial change in circumstances).

Husband contends that the court erred by converting the rehabilitative maintenance obligation into a lump-sum property award. He argues that because it is unclear when the full amount of maintenance will be paid, the characterization of the payments as maintenance is incorrect: "It could take the husband the rest of his life to settle this obligation with his former wife. This is not the function of rehabilitative maintenance." We believe husband misconstrues the court's order.

■ Lump-sum alimony, which is authorized in some states, is a fixed amount set forth in a final judgment, and cannot be modified even if there should be a change of circumstances. See *Scoville v. Scoville*, 426 A.2d 271, 273 (Conn. 1979). There is no suggestion of any kind of lump-sum award in the present order. The original order required a stream of rehabilitative maintenance payments over a ten-year period, totalling $60,000—120 payments of $500. But there is no basis in the amended order to conclude that $60,000 is a fixed

amount due and owing as of the date of the order or at any future date. Under the amended order, payments might be made in odd amounts from month to month, depending on husband's income. Reference to the total amount of $60,000 is included to indicate that when that total is paid the maintenance obligation will be discharged, and to emphasize that a portion of husband's monthly obligation under the original order has been deferred, not eliminated. There is nothing in the order to bar modification under § 758, should that become necessary.

██ Nor does the amended order violate the requirement that a court impose a time limit on rehabilitative maintenance. See *Cleverly v. Cleverly*, 147 Vt. 154, 159, 513 A.2d 612, 615 (1986). Nothing in the court's order eliminates the ten-year goal. Further, it is not clear that husband will be unable to increase his monthly income in the future. It would be detrimental to the purposes of rehabilitative maintenance if the only option for a court faced with a similar situation were to reduce the amount of maintenance or eliminate it altogether, to stay within the initially prescribed period for rehabilitative maintenance payments.

*Affirmed.*