NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 46

No. 2015-319

| | |
|---|---|
| Kathleen Zink | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Bryan Zink | February Term, 2016 |

Samuel Hoar, Jr., J.

Paul D. Jarvis of Jarvis, McArthur & Williams, Burlington, for Plaintiff-Appellee.

Margaret M. Strouse of Strouse & Bond PLLC, Burlington, for Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **ROBINSON, J.**   Husband appeals from the trial court's order denying his request to modify his spousal maintenance obligation and granting wife's motion to enforce. He argues that the court erred in finding an absence of changed circumstances, and in finding that wife did not agree to accept reduced payments in satisfaction of past spousal maintenance obligations. We reverse and remand for additional proceedings.

¶ 2.    The underlying December 2007 divorce order incorporates the parties' agreement that husband shall pay wife permanent alimony of $1800 per month. In January 2015, wife filed a motion to enforce and for contempt. She asserted that husband failed to fully comply with his monthly obligation, and had recently informed her that he would no longer pay any spousal maintenance. Husband opposed wife's motion and moved to modify his maintenance obligation.

He denied telling wife that he would no longer pay maintenance, but noted that he was not able to pay the court-ordered sum. Husband maintained that since the issuance of the final divorce order, the parties had, by mutual agreement, reduced the maintenance payments. Husband also argued that the parties' financial circumstances had changed since the divorce.

¶ 3. Following an evidentiary hearing, the court made the following findings. Husband is a self-employed truck driver. At the time of the parties' divorce, husband lived in his truck and had minimal housing expenses. Husband has since remarried and moved in with his current wife. Husband's effective earnings are $40,000 per year, and his current wife receives gift income of $12,000 per year. Husband and his current wife also have approximately $50,000 in equity in their home. Although husband's income has increased since the divorce, the increase has been more than offset by an increase in living expenses. Husband and his current wife, with their combined incomes, can meet their basic needs, with $250 per week extra after expenses. Husband testified that at the time of the divorce, he did not understand what "permanent spousal maintenance" meant, and that his purpose in stipulating was to try to keep wife, who was unemployed, living in the parties' condominium.

¶ 4. Wife was unemployed at the time of the divorce and living in the parties' condominium. Wife has since sold the condominium, and now has lower housing expenses. Since 2011, wife has worked at the University of Vermont, and presently earns $2641 per month. Wife also receives $503 per month from retirement funds and pensions, as well as $1134 from Social Security Income, which she started collecting in May 2013.

¶ 5. The parties have had conversations over the years about reducing the amount of spousal maintenance payments. When husband said that he could not pay $1800 per month, wife suggested lower amounts. Wife did so because she felt that if she insisted on full payment, husband would not pay anything. The court found that there was never an enforceable agreement

between the parties to modify husband's alimony obligation. It determined that, at most, wife exercised forbearance.

¶ 6. Turning to husband's motion to modify, the court found no "real, substantial, and unanticipated change of circumstances" to warrant modification. 15 V.S.A. § 758. The court reasoned that it was "not beyond the bounds of reasonable anticipation" that husband would someday remarry and move in with a new spouse, thereby increasing his housing expenses. Similarly, the court found that wife's finding work, earning a modest salary, and moving from the condominium could not reasonably be described as unanticipated. The court explained: "Each of these events is well within the realm of ordinary foresight." The court recognized that it was nearly impossible for husband to pay the court-ordered sum, and concluded that the spousal maintenance order was excessive at the time husband stipulated to it, and remained excessive now. However, the court denied husband's motion to modify because husband had failed to show a real, substantial, and unanticipated change of circumstances. It therefore granted wife's motion to enforce, and ordered husband to pay $42,542 in maintenance arrears. The court denied wife's motion for contempt as well as her request for attorney's fees, because husband did not have a present ability to pay either the arrearages or the $1800 monthly obligation.

¶ 7. On appeal, husband argues that the court erred in finding no change of circumstances sufficient to consider a modification, and that the trial court erred in concluding that the parties' agreements did not amount to a contractual modification of husband's spousal maintenance obligation.

¶ 8. We review the trial court's factual findings deferentially, and will not set them aside unless they are clearly erroneous. Stickney v. Stickney, 170 Vt. 547, 548, 742 A.2d 1228, 1230-31 (1999) (mem.). "Review of conclusions of law is . . . nondeferential and plenary." Id. at 547, 742 A.2d at 1231.

3

I. Real, Substantial, and Unanticipated Change of Circumstances

¶ 9.     "Under 15 V.S.A. § 758, a court may modify a spousal maintenance award only upon a showing of a real, substantial, and unanticipated change of circumstances." Herring v. Herring, 2011 VT 38, ¶ 6, 190 Vt. 19, 24 A.3d 574 (quotation omitted). "[S]ubstantial and unanticipated changes in the nonmaintenance income available to the recipient spouse, or to the income available to the obligor spouse, can be a change in circumstances to warrant modification of a maintenance award." Taylor v. Taylor, 175 Vt. 32, 38, 819 A.2d 684, 689 (2002). The court has discretion in deciding whether changed circumstances exist, and "no fixed standards exist for determining what meets the threshold." Herring, 2011 VT 38, ¶ 6 (citing Taylor, 175 Vt. at 36, 819 A.2d at 688). We review a trial court's decision whether to modify spousal maintenance deferentially, and will not disturb its ruling "unless the discretion was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Mayville v. Mayville, 2010 VT 94, ¶ 8, 189 Vt. 1, 12 A.3d 500 (quotation omitted).

¶ 10.     Pointing to his increased housing expenses and wife's increased income and lower housing expenses since the time of the divorce, husband argues that the court misconstrued the term "unanticipated change of circumstances" in concluding that these changes were "within the realm of ordinary foresight."

¶ 11.     In assessing husband's argument, we emphasize the difference between a change that may be theoretically foreseeable at the time of a divorce and one that is actually factored into the parties' or court's assumptions in establishing a spousal maintenance order. We recently considered this distinction in Herring, 2011 VT 38, ¶ 6. In that case, the trial court declined to modify an order for permanent spousal maintenance in the amount of $1000 per month on account of husband's subsequent conviction and sentence to thirty-five years to life. It reasoned that because husband was facing the criminal charges at the time of his final divorce order, his incarceration was not an unanticipated change of circumstances warranting modification. We

4

reversed, noting that the incarceration may have been foreseeable insofar as he faced criminal charges, but whether he would actually be convicted and what his sentence would be were pure speculation. <u>Id</u>. ¶ 7. We explained more generally,

> The term "unanticipated" in § 758 must be interpreted by reviewing the facts and circumstances underlying the divorce order and determining whether incarceration, or another condition causing a reduction in income, was taken into account in establishing the original maintenance order. If it was, then the incarceration or other condition was anticipated. If it was not, then the incarceration or other condition was unanticipated.

<u>Id</u>. ¶ 8.

¶ 12.   Our analysis in <u>Herring</u> relied heavily on our discussion in <u>Shaw v. Shaw</u>, 162 Vt. 338, 648 A.2d 836 (1994).   In that case, husband sought to modify his spousal maintenance obligation because he lost his job, and wife argued that his job loss was anticipated because he was being investigated for misconduct at the time of the divorce.  This Court rejected wife's argument, noting that the testimony did not suggest that the amount of maintenance determined through negotiation was affected in any way by the possibility of a later job loss. <u>Id</u>. at 340, 648 A.2d at 838;   see also <u>DeKoeyer v. DeKoeyer</u>, 146 Vt. 493, 495-96, 507 A.2d 962, 963-64 (1986) (disapproving reliance on speculation about future economic conditions and emphasizing that conditions at time of divorce and conditions contemporaneous with modification hearing are paramount in hearing to modify spousal maintenance).

¶ 13.   We have likewise held in cases involving remarriage that even though remarriage is within the realm of possibility for any divorced person, it may still constitute a "real, substantial, and unanticipated change of circumstances," depending on its effect on a party's financial security. See <u>Taylor</u>, 175 Vt. at 38, 819 A.2d at 689.  We have specifically recognized that an obligor spouse can bring a motion to modify if a remarriage substantially reduces the need for maintenance. <u>Johnson v. Johnson</u>, 155 Vt. 36, 42, 508 A.2d 503, 507 (1990).  Indeed, even when a maintenance award contains a provision that automatically reduces maintenance upon a party's

remarriage, we have recognized that modification may be appropriate. See Taylor, 175 Vt. at 38, 819 A.2d at 689.

¶ 14. In light of this authority, we conclude that the trial court took an overly narrow approach to the "changed circumstances" analysis by basing its conclusion on whether the changes in question were "within the realm of ordinary foresight." This is not the standard for "changed circumstances" reflected in our case law. See Herring, 2011 VT 38, ¶ 6 (reversing order declining to modify spousal maintenance where trial court "misapplied the standard for determining whether a change of circumstances is unanticipated"). It is almost always within the realm of possibility that a party might remarry, take or lose a job, or incur increased expenses for one reason or another. That does not mean that those changes are, for the purposes of § 758, unanticipated.

¶ 15. The threshold question before the trial court was whether subsequent developments—husband's move into a home, wife's move to a less expensive living situation, and wife's subsequent employment—departed substantially from the assumptions baked into the stipulated spousal maintenance order. The evidence below could support a conclusion that these changes, individually or in combination, gave rise to unanticipated changed circumstances. At the time of the final divorce, husband had no housing expenses because he was living in his truck, and wife was unemployed and living in the parties' condominium. The trial court could have concluded that husband's taking on reasonable housing expenses and wife getting a job that produced significant income substantially changed their respective financial circumstances in an unanticipated way. Because the trial court applied an incorrect standard in evaluating husband's motion, and the evidence could support a conclusion of changed circumstances, we reverse and remand for additional proceedings.

¶ 16. On remand, the court should consider the parties' economic circumstances at the time of the final divorce order as compared to their economic circumstances at the time of the

6

divorce hearing. See, e.g., <u>Herring</u>, 2011 VT 38, ¶ 8, (explaining that term "unanticipated" must be interpreted by reviewing facts and circumstances underlying divorce order and determining if event causing reduction in income was considered in establishing original maintenance order). Circumstances that were "not fully taken into account by the original divorce," cannot "later be found to have been anticipated." <u>Id</u>. (citation and quotation omitted). If the trial court does conclude that the evidence supports a modification, it may make the modification effective as of any reasonable date on or after the date of filing of the motion to modify the order. <u>Hausermann v. Hausermann</u>, 2013 VT 50, ¶ 5, 194 Vt. 123, 75 A.3d 608.

## II. Spousal Maintenance Arrearages

¶ 17. Our conclusion on the first issue does not dispose of husband's remaining argument that wife agreed to accept reduced sums in satisfaction of husband's maintenance obligation at various times during the eight years leading up to the motions at issue here, and that these agreements should be enforced. Husband argues that the evidence showed that the fundamental elements of contract formation were present here. He points to wife's testimony that she agreed to reductions in the spousal support over the years, and that she even suggested them at times.

¶ 18. Wife argues that husband is essentially seeking to modify his spousal maintenance obligation retroactively. Wife contends a modification of spousal maintenance may be allowed as of any reasonable date on or after the date of filing the motion to amend the support order, so the court is required to enforce husband's obligation to pay the full amount of his court-ordered spousal maintenance payments with respect to any dates preceding the filing of the motion to modify.

¶ 19. The court here found that there was no agreement to modify the permanent maintenance obligation set forth in the final divorce order. "On appeal, we will overturn a trial court's factual finding only if it is clearly erroneous." <u>Quenneville v. Buttolph</u>, 2003 VT 82, ¶ 16, 175 Vt. 444, 833 A.2d 1263.

7

¶ 20.    We agree that the effective date of a court's modification of an obligor's spousal maintenance obligation cannot precede the date of the motion to modify.  See Hausermann, 2013 VT 50, ¶ 5 ("The court has discretion to set the effective date of a maintenance award retroactive to the date the motion to amend was filed.").  We accordingly reject husband's suggestion that by agreement, well before husband filed his motion to modify, the parties by mutual agreement effectively modified the existing court order as to spousal maintenance.

¶ 21.    However, we do not understand husband to be arguing solely that the court should retroactively modify his court-ordered spousal maintenance obligation.  Rather, husband also argues that on an ongoing basis for a period of years, wife agreed to accept reduced payments in full satisfaction of husband's then-due monthly payments.  This argument, whether based on principles of contract, equitable estoppel, or waiver, is distinct from an argument that the court-ordered spousal maintenance obligation was itself modified by the parties' agreement or conduct. As one court explained, "[T]he question here is not whether the parties themselves modified the court order but rather whether or not a waiver was effected by an agreement between [the parties]." Graham v. Graham, 345 P.2d 316, 320 (Cal. Dist. Ct. App. 1959) (affirming trial court determination that wife had waived full alimony payments where husband told her that he could not pay $130 per month and would instead pay $25 per week, wife apparently agreed to the arrangement, and husband paid the reduced amount for almost eleven years while wife took no legal steps to enforce compliance with the court order); see also Strickland v. Strickland, 650 S.E.2d 465, 471 (S.C. 2007) (holding that wife's claim for past due alimony was barred under doctrine of equitable estoppel where wife's conduct conveyed impression that she was willing to accept alimony in amount different from that articulated in divorce decree, she agreed to accept lower payments because husband was trying to get "straightened out," she pursued no alimony, and other elements of equitable estoppel were satisfied); Stauffer v. Stauffer, 267 S.W.3d 805, 807-08 (Mo. Ct. App. 2008) ("Waiver by acquiescence may be interposed as a defense of an action

8

brought by wife for arrearages in alimony" thereby bypassing "the general rule that neither side may modify or ignore a court order" (quotations omitted)); In re Marriage of Paboojian, 225 Cal.Rptr. 65, 66-68 (Cal Ct. App. 1987) (affirming trial court judgment that wife's agreement that husband need not pay alimony constituted waiver that precluded enforcement of spousal support order); Sudan v. Sudan, 199 S.W.3d 291, 292-93 (Tex. 2006) (enforcing wife's written agreement to accept lump sum in exchange for any future alimony obligation); but see In re Marriage of Sabine M. & Toshio M., 63 Cal.Rptr.3d 757, 765-66 (Cal. Ct. App. 2007) (holding that accord and satisfaction as to spousal support obligation requires "existence of bona fide dispute concerning debt," and that agreement for payment of part of amount due is without consideration).

¶ 22.   To the extent that the trial court found that husband had failed to prove that wife had agreed to a permanent prospective modification of his spousal maintenance obligation, that finding was supported by the record.  We do not read the trial court's decision as addressing the question of whether, when, and to what extent, wife may have forfeited her ability to collect retroactive support payments that would have been due under the divorce order as a result of agreement, waiver, or equitable estoppel.  On remand, in connection with wife's claim for spousal maintenance arrearages, the trial court should address these questions.

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice

9