SKOGLUND, J.
¶ 1. Husband, Mark Atherton, appeals the trial court's order denying his motion to modify spousal maintenance payments to wife, Holly Atherton, for failure to show a real, substantial, and unanticipated change in circumstances as required by 15 V.S.A. § 758. We reverse.
¶ 2. Husband and wife married in 1986. They lived in Vermont for most of their married life, though prior to their separation, they briefly lived together in Florida. They separated and filed for divorce in May 2016 in Vermont. The trial court signed and issued the final divorce order, which incorporates the terms of a stipulation agreed to by the parties, on June 27, 2017. The final order requires husband to pay $ 1500 per month in spousal maintenance from 2017 until 2027. If husband chooses not to retire in 2027, he will continue making payments of $ 1500 per month until 2029, when payments would be reduced to $ 350 per month until 2031. If husband chooses to retire in 2027, the spousal maintenance will be reduced to $ 350 per month and continue until 2031.
¶ 3. Prior to and throughout the pendency of the divorce proceedings, husband was employed by a national insurance company and made $ 5895 per month.[1] In June 2016, one month after the parties filed for divorce and one year prior to the final order, husband received a "final written warning" from his supervisor, even though he testified that he had not received any prior written warnings. The warning letter reprimanded husband for failing to follow company policies, sanctioned him, and advised him that failure to maintain acceptable conduct and performance *605 could lead to future sanctions, including termination.[2]
¶ 4. In April 2017, husband took a paid leave of absence, during which he received disability benefits. Husband requested the leave due to his mental health-he was "consumed with the divorce," which manifested as anxiety and depression and made it challenging to function at work. When he returned from his leave of absence, husband believed that he was going back to work in the same capacity. Instead, upon his return in early August 2017, husband's employer placed him on unpaid leave and terminated him on August 22, 2017.
¶ 5. After his termination, husband returned from Florida to Vermont to look for work. Husband found two part-time jobs but was unable to afford housing and was struggling to pay his monthly bills. Husband asserted that the primary cause of his financial challenges was his obligation to pay alimony when he no longer earned as much as he did when employed by the insurance company. As a result, husband filed a motion to modify his spousal maintenance on September 13, 2017, seeking a temporary reduction to $ 500 per month while he looked for better-paying work, with a revised determination once he had secured long-term employment. In his motion, he explained that he was unable to find a job that would pay him what he earned when he was employed at the insurance company and argued that his termination was a real, substantial, and unanticipated change in circumstances and thus was grounds for modification pursuant to 15 V.S.A. § 758 and Vermont Rule forFamily Proceedings 4.2(d).
¶ 6. Wife opposed husband's motion to modify, and two hearings were held-the first in December 2017 and the second in March 2018. At the first hearing, husband informed wife and the trial court for the first time about the warning letter he received in June 2016 and the leave of absence he took in April 2017. Husband testified that he understood if he did not improve his performance and address the issues outlined in the warning letter, his employment could be terminated. He further testified that after the warning letter, he attempted to maintain a level of acceptable conduct and performance in order to avoid further sanctions and did not feel as though his job was in jeopardy.
¶ 7. In an April 2018 order, the trial court denied husband's motion to modify spousal maintenance. The trial court reasoned that husband alone knew of the warning letter, the behavior that led to said warning, and his leave of absence from work when he signed the stipulation agreeing to the spousal maintenance arrangement. And although he was terminated from his employment one month after the final order, the fact "[t]hat [husband's] employer's known, expressed dissatisfaction with his conduct could ripen into actual termination was a reasonable possibility at the time the stipulation was entered into." Therefore, the trial court concluded that husband failed to meet his burden of showing by a preponderance of the evidence that a real, substantial, and unanticipated *606 change in circumstances existed to support modification.
¶ 8. This appeal followed. Husband argues that the trial court's determination that his termination was not a real, substantial, and unanticipated change in circumstances was in error because it was based on the erroneous conclusion that husband's knowledge that he might be terminated eliminated his ability to move for modification when he was actually terminated. Wife counters by asserting that not only was husband's termination not unanticipated, husband should also not benefit from the failure to disclose the warning letter and leave of absence during the negotiations on the stipulation for the final order.
¶ 9. Pursuant to 15 V.S.A. § 758, the trial court may modify a spousal maintenance order only "upon a showing of a real, substantial, and unanticipated change of circumstances." This is "a jurisdictional prerequisite" for modification of spousal maintenance, and "the burden is on the moving party to establish the requisite change." Golden v. Cooper-Ellis, 2007 VT 15, ¶ 57, 181 Vt. 359, 924 A.2d 19. "The threshold determination of changed circumstances is discretionary, and no fixed standards exist for determining what meets the threshold." Herring v. Herring, 2011 VT 38, ¶ 6, 190 Vt. 19, 24 A.3d 574. Instead, the "evaluation of whether or not any given change is substantial must be determined in the context of the surrounding circumstances." Taylor v. Taylor, 175 Vt. 32, 36, 819 A.2d 684, 688 (2002) (quotation omitted). Because we afford this determination significant deference on review, " 'we will not disturb the court's determination unless its exercise of discretion was on grounds or for reasons clearly untenable, or the exercise of discretion was to a clearly unreasonable extent.' " Herring, 2011 VT 38, ¶ 6, 190 Vt. 19, 24 A.3d 574 (quoting Meyer v. Meyer, 173 Vt. 195, 197, 789 A.2d 921, 923 (2001) ). As we concluded in Herring, "[d]espite the deference we give the trial court, we cannot uphold its decision in this case because" the trial court applied the wrong standard and erroneously concluded that husband's termination was not an unanticipated change in circumstances. 2011 VT 38, ¶ 6, 190 Vt. 19, 24 A.3d 574.
¶ 10. We take this opportunity to emphasize and clarify the standard a trial court must apply when determining whether a change in circumstances is "unanticipated" in the context of a motion to modify spousal support. Three of this Court's opinions are instructive: Shaw v. Shaw, 162 Vt. 338, 648 A.2d 836 (1994) ; Herring, 2011 VT 38, 190 Vt. 19, 24 A.3d 574 ; and Zink v. Zink, 2016 VT 46, 202 Vt. 10, 147 A.3d 75.
¶ 11. In Shaw, the husband was terminated from his job ten months after the final divorce order due to wrongdoings that occurred eight years prior. The trial court denied the husband's motion for modification of spousal support, reasoning that because the husband was terminated "for wrongdoing of a serious nature" that had been criminally investigated a year prior to the divorce, his termination was not unanticipated. This Court disagreed with the trial court. Shaw, 162 Vt. at 340, 648 A.2d at 838. We noted that "[w]rongdoing that results in diminished income may fall within the category of voluntary termination of employment and bar modification of maintenance on grounds of changed circumstances." Id. (emphasis added). However, we found that "[t]here was no evidence that, at the time of the divorce, either party had any reason to believe husband would lose his job because of his prior actions" and that "the testimony d[id] not suggest that the amount of maintenance determined through negotiation was affected in any way by the possibility *607 of a later job loss." Id. Furthermore, the wife there acknowledged "that there were several reasons for husband's termination and that it was not possible to determine that the sole reason was" husband's wrongdoing eight years prior. Id. at 340-41, 648 A.2d at 838.
¶ 12. We further clarified this standard in Herring, 2011 VT 38, 190 Vt. 19, 24 A.3d 574. There, the husband was accused of a serious crime prior to the divorce, agreed to permanent maintenance in the final divorce order, and was later convicted and incarcerated, rendering him unable to meet his maintenance obligation. The husband moved for modification of spousal maintenance. The trial court denied the motion, holding that the husband's incarceration was not an unanticipated change in circumstances warranting modification. We disagreed and reversed, noting that we could not "conclude that the pendency of the criminal proceeding or the nature and impact of husband's crimes made his incarceration, and resulting loss of income, anticipated." Id. ¶ 7 (citing DeKoeyer v. DeKoeyer, 146 Vt. 493, 495-96, 507 A.2d 962, 964 (1986) (explaining that "irrelevant was defendant's speculation regarding his future economic condition; only his condition contemporaneous with the hearing and his condition at the time of the divorce were relevant") ). Even though the husband was criminally charged at the time of the divorce, the divorce "proceeded on the basis that husband was working and producing income and would continue to do so." Id. We explained that "[i]t would have been impossible to consider [how the result of the criminal trial might affect the husband's income] without speculation and an attempt at a contingent order with numerous unpredictable contingencies" because at the time of the final maintenance order, "husband's criminal case had not yet concluded, and his conviction and incarceration were still uncertain." Id. ¶¶ 7 -8.
¶ 13. This Court explained that " 'unanticipated' in § 758 must be interpreted by reviewing the facts and circumstances underlying the divorce order and determining whether incarceration, or another condition causing a reduction in income, was taken into account in establishing the original maintenance order." Id. ¶ 8. If the condition was considered, then it was anticipated-if it was not, then it was unanticipated. We also emphasized, regarding voluntary termination of employment, that "in a situation where a job was lost due to wrongdoing that occurred before a divorce, the loss of employment was not voluntary." Id. ¶ 10.
¶ 14. We again revisited the "unanticipated" standard in Zink, 2016 VT 46, 202 Vt. 10, 147 A.3d 75. Although the facts are slightly different, centering on remarriage, the Zink analysis was based on the standard outlined in Herring and Shaw. In Zink, the husband sought modification of the maintenance order based on increased living expenses after he had remarried some years after his divorce with the wife. The trial court denied the motion, reasoning "that it was not beyond the bounds of reasonable anticipation that husband would someday remarry and move in with a new spouse, thereby increasing his housing expenses." Id. ¶ 6 (quotation omitted). The trial court also explained that the event was "well within the realm of ordinary foresight." Id. (quotation omitted). We reversed and "emphasize[d] the difference between a change that may be theoretically foreseeable at the time of a divorce and one that is actually factored into the parties' or court's assumptions in establishing a spousal maintenance order." Id. ¶ 11. "It is almost always within the realm of possibility that a party might remarry, take or lose a job, or incur increased expenses for one reason or another. That does not mean that those changes *608 are, for the purposes of § 758, unanticipated." Id. ¶ 14. This Court described that "[t]he threshold question before the trial court [is] whether subsequent developments ... departed substantially from the assumptions baked into the stipulated spousal maintenance order." Id. ¶ 15.
¶ 15. Here, the trial court found that because husband had received the warning letter and had taken a leave of absence, it was a "reasonable possibility at the time the stipulation was entered into" that husband could be terminated. And, wife argues on appeal that husband's warning letter, coupled with his subsequent leave, yielded his termination "not surprising." We conclude that the trial court applied, and wife advocates for, an improper standard when determining whether husband's termination was "unanticipated." The question is not whether there is a "reasonable possibility" that husband could lose his job in the future-as we noted in Zink, it is almost always a reasonable possibility that someone "might remarry, take or lose a job, or incur increased expenses for one reason or another." Id. ¶ 14. The question is whether subsequent developments depart substantially from the assumptions considered in the maintenance order.
¶ 16. While husband's termination may have been foreseeable based on his receipt of the warning letter and his leave of absence to address mental health concerns,[3] any conclusion at the time of the final order regarding whether he would actually be terminated as a result of these two factors, and what change in income would result, would have been based purely on conjecture. Even if husband had disclosed his warning letter and leave of absence, the trial court would still have been unable to make a finding that husband would lose his job without basing that finding on speculation. Husband testified in hearings on the modification motion that, after the warning letter, he attempted to maintain a work performance level that satisfied the employer's expectations. And, although he was nearing the end of a leave of absence at the time of the final divorce order, he believed that he would return to his job with the insurance company and assume the same duties and income that he had prior to his leave.
¶ 17. Furthermore, there is nothing in the record that reflects that husband's termination was a direct result of a violation of the expectations set out in the warning letter, or his leave of absence. See Shaw, 162 Vt. at 341, 648 A.2d at 838 (explaining that it was "not possible to determine that the sole reason [for the husband's termination] was the [previous wrongdoing]"). The mere possibility that husband might be terminated in the future as a result of a warning letter he received a year prior to the final spousal maintenance order or a medical leave of absence that he requested, and his employer approved, is not sufficient to conclude that his termination was not "unanticipated" for the purposes of § 758.
¶ 18. We acknowledge wife's argument that husband "should not benefit from his failure to disclose material facts." While this Court always encourages full candor in all court proceedings and negotiations, husband's failure to disclose his warning letter and leave of absence does not change the outcome of this case, and thus *609 it cannot be said that he benefited from it. Even if husband had disclosed the two factors, the same assumptions-husband was employed and earning a specific salary-would have been "baked into" the maintenance order. Zink, 2016 VT 46, ¶ 15, 202 Vt. 10, 147 A.3d 75. His support obligations at the time of the final maintenance order would not have been affected by a "reasonable possibility" that he could be terminated at an indeterminate future time. On appeal, wife offers no legal argument as to why the standard we outline above should not be applied in the present case, but simply asserts the trial court did not err because husband's termination was "not surprising."
¶ 19. At oral argument, wife asserted for the first time that husband's failure to disclose potentially constituted fraud because as part of the stipulation, husband certified that he "fully disclosed to [wife] all assets, income and financial information." However, this Court does not agree that failure to disclose a warning letter from an employer or a medical leave of absence violates the provision that requires disclosure of "all assets, income and financial information."
¶ 20. In summation, we conclude that the trial court applied an erroneous standard when determining whether husband's termination resulted in a "real, substantial, and unanticipated change in circumstances" for the purposes of modification of the spousal maintenance order. We remand to the trial court for further proceedings consistent with this order.
Reversed and remanded.

Husband was an adjuster for the majority of his employment with the insurance company but transitioned to a position as an auditor when husband and wife moved to Florida.

Specifically, husband was accused of: (1) falsifying company documents as a result of an inaccurate mileage report; (2) making misrepresentations to his supervisor regarding fuel records; (3) failing to get time off approved in advance; (4) not working business hours after he visited with a friend during regular business hours; and (5) failing to complete expense reporting in a timely and accurate fashion. The sanctions required that husband's performance rating not fall below a certain standard, prohibited husband from applying for internal jobs for the following twelve months, and restricted husband's eligibility for a salary increase during the next salary adjustment cycle.

We note that it was not clear from the record before this Court, nor was it addressed in the trial court, whether or not the leave husband took was under the Family and Medical Leave Act, 29 U.S.C. § 2601, or a comparable state statute. If husband's leave was protected by statute, his termination would not only be not foreseeable as a result; it would be illegal.