NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 13

No. 2019-169

| | |
|---|---|
| Gerald R. Theberge | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Mary Ann R. Theberge | October Term, 2019 |

Robert P. Gerety, Jr., J.

Sharon J. Gentry of Costello, Valente & Gentry, P.C., Brattleboro, for Plaintiff-Appellee.

Sharon L. Annis of Buehler & Annis, PLC, Brattleboro, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Burgess, J. (Ret.)[1] and
Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** This appeal stems from the denial of defendant's post-judgment motion to enforce the cost-of-living adjustment (COLA) to a spousal-maintenance award made in her favor in the parties' divorce action. The trial court found that the parties agreed to a modification of the maintenance award eliminating the yearly COLA and that, consequently, plaintiff's maintenance payments—which continued after the alleged agreement, absent the COLA—were not in arrears. Accordingly, the court denied the enforcement motion. For the reasons stated herein, we reverse and remand to the family division for corrected findings and conclusions, and additional findings if necessary.

---

[1] Justice Burgess was present for oral argument but has since recused himself.

¶ 2.    The relevant trial court findings are as follows. The parties were divorced in 2000. Under the final divorce order, plaintiff was obligated to make monthly spousal-maintenance payments to defendant. This amount included a component intended to compensate defendant for her contributions to the marriage, "albeit untied to any specific percentage of the monthly obligation." The maintenance award also contained an annual COLA based on the cost-of-living index for the northeastern United States, whereby the maintenance award was to be increased annually by an amount equal to the previous year's payment multiplied by the increase in the cost-of-living index.

¶ 3.    At the time of their 2000 divorce, the parties had two minor children. No provision for payment of the children's college expenses was made in the divorce order. However, the parties do not dispute that, at some point after the divorce became final, they agreed that plaintiff would contribute 75% and defendant 25% of the children's college expenses. This agreement was never reduced to writing, but when the parties' eldest child entered college, they paid for his expenses in accordance with its terms.

¶ 4.    At some point, plaintiff neglected for two or three years to increase his spousal-maintenance payment by the yearly COLA. Defendant did not object to this until after their youngest child entered college and tuition payments became due. The trial court found that defendant then sent a note to plaintiff requesting that plaintiff address the failure to apply COLA adjustments to the maintenance payments and further indicating she did not want to continue paying 25% of the college tuition as they had previously agreed. Plaintiff responded to defendant's communication by bringing his maintenance payments current, including payment of the past-due COLAs, and informing defendant of the amount she owed for the tuition payment. Shortly thereafter, the court found, the parties "reached a verbal compromise agreement that defendant was relieved of her obligation to pay a share of the college expenses and plaintiff was relieved of the obligation to include cost of living increases as required under the final divorce order." This

2

agreement was also not reduced to writing, and neither party filed a motion to amend the maintenance provision of the divorce order to conform thereto. After the second agreement on tuition was reached, the parties performed in accordance with it. Defendant did not contribute to their youngest child's ongoing education expenses and accepted spousal support payments for approximately ten years with no COLAs—until bringing the enforcement action seeking the allegedly outstanding COLA payments along with attorney's fees and expenses.[2]

¶ 5. In denying defendant's motion to enforce, the trial court concluded that the parties' arrangement regarding sharing the children's tuition payments and their subsequent agreement to waive defendant's tuition obligation in exchange for waiving plaintiff's COLA obligation were each enforceable oral contracts.[3] It further determined that adequate consideration existed to support the agreements and that a valid verbal agreement was formed through which defendant could have waived her right to collect the retroactive COLA adjustments. It held that defendant "waived by performance" her right to collect those adjustments by agreeing to forgo such payments in exchange for release from her obligations under the oral tuition agreement, and then performing the modification agreement by accepting spousal maintenance payments without the COLA adjustments for ten years. The trial court did not resolve defendant's contention that, because some portion of the maintenance award was compensatory in nature, any agreement to waive the COLA attributable that portion was unenforceable as a matter of public policy.

¶ 6. Defendant raises numerous claimed errors on appeal. She asserts that the court erred in its findings concerning the existence of both oral agreements and in concluding that she waived receipt of her full spousal maintenance award. She further argues that if the trial court's

---

[2] Defendant is presently mentally and physically incapacitated, and this action was brought in her name by her representative pursuant to a power of attorney. The parties do not dispute that defendant had the capacity to file a motion to enforce during the preceding period.

[3] Based upon part performance of the agreements, the court concluded that the Statute of Frauds did not apply to bar their enforcement.

3

conclusion that the parties entered into a modified oral agreement is affirmed, that agreement is either unconscionable or void for public policy reasons and therefore nonetheless unenforceable. Plaintiff maintains that the court did not err in finding the existence of an oral agreement to forgo the COLAs, but contends that, even if there was no second oral agreement, various equitable theories preclude defendant's enforcement of the COLA provision in the agreement.

¶ 7. We review the trial court's conclusions of law de novo, see Gosbee v. Gosbee, 2015 VT 82, ¶ 18, 199 Vt. 480, 125 A.3d 514, and its factual findings in the light most favorable to the prevailing party below, setting them aside only if they are clearly erroneous, see Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 10, 178 Vt. 35, 869 A.2d 145. The existence of a contract or contracts between the parties is a question of fact subject to the latter standard of review. See Sweet v. St. Pierre, 2018 VT 122, ¶ 11, __ Vt. __, 201 A.3d 978. However, "[t]he existence of sufficient consideration for a contract is a question of law." Bergeron v. Boyle, 2003 VT 89, ¶ 19, 176 Vt. 78, 838 A.2d 918.

¶ 8. It is important to recognize at the outset what this case does not concern. This case is not about a modification of the maintenance provision of the divorce order. Neither party sought a modification of the spousal maintenance order through court process, which would have required a showing of real, substantial, and unanticipated change of circumstances as a threshold matter. Taylor v. Taylor, 175 Vt. 32, 36, 819 A.2d 684, 688 (2002) ("Before the court can modify a maintenance order, it must find that there has been a real, substantial and unanticipated change of circumstances; if the required change has not occurred the court has no jurisdiction to modify the order."). Rather—as the trial court properly observed—this case concerns whether the parties entered into one or more contracts apart from the final divorce order, one of which involved defendant's purported waiver of a COLA awarded to her under the divorce order. See Zink v. Zink, 2016 VT 46, ¶ 22, 202 Vt. 10, 147 A.3d 75 (recognizing that parties may enter into

agreements that affect maintenance provisions of divorce order). With this understanding, we turn to the merits of the parties' arguments.

## I. The Tuition Agreement

¶ 9. Defendant does not contest the trial court's finding that the parties at one point agreed to share the college tuition expenses of their children, with plaintiff paying 75% and defendant 25% of the total amount. However, she argues that this agreement did not constitute a contract between the parties, because neither was under any legal obligation to pay their children's tuition and therefore any agreement between them benefitted only third parties—their children—and lacked consideration. As a result, she contends that the trial court's conclusion that a binding contract existed concerning the payment of tuition expenses was erroneous. Although neither party seeks enforcement of the initial tuition agreement, its enforceability matters because defendant claims that there was no tuition agreement to be modified by the second agreement regarding waiver of the COLA, arguing that, in the absence of an enforceable underlying contract, no modification of the same could exist. Indeed, the trial court found that the benefit defendant received in the second alleged contract was plaintiff's agreement to waive his right to enforce the provision of their first agreement requiring defendant to pay 25% of their children's college tuition bills.[4] We conclude that, if the tuition-sharing agreement was indeed unenforceable, then defendant is correct in asserting that plaintiff's waiver of his right to enforce the same was not consideration.

¶ 10. This is so because consideration exists only where a promisee "giv[es] up something which the promisee was theretofore privileged to retain, or doing or refraining from

---

[4] Although the trial court found that, following the alleged second agreement, plaintiff paid 100% of their daughter's tuition expenses, it did not find that plaintiff agreed to do so in exchange for defendant's promise to waive his COLA obligation. As to that exchange, the trial court found only that plaintiff promised to waive defendant's obligation to pay 25% of the bill.

doing something which the promisee was then privileged not to do, or not to refrain from doing." 3 R. Lord, Williston on Contracts § 7:4 (4th ed. 2019). A promise to refrain from doing something which the promisee was never legally empowered to do—like a promise to do what one is already legally bound to do—"creates no new duty and cannot support an action; nor does it afford a consideration for a promise by the other party." Manley v. Vt. Mut. Fire Ins. Co., 78 Vt. 331, 336, 62 A. 1020, 1021 (1906) (holding that "if one promises to do what he is already legally bound to do, the promise is nude"). Accordingly, we must consider whether a valid contract existed regarding the payment of tuition.

¶ 11. We first observe that mutual promises may provide the necessary consideration for contract formation. H.P. Hood & Sons v. Heins, 124 Vt. 331, 337, 505 A.2d 561, 565 (1964) (" 'Mutual promises, in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another.' " (quoting 1 Williston on Contracts § 103 (3rd ed. 1957)); see also Bergeron, 2003 VT 89, ¶ 19 (finding "bargained for exchange of mutual promises was sufficient consideration to support the contract"). Plaintiff's agreement to pay 75% of their children's tuition costs if defendant would pay 25% of the same was such an exchange of mutual promises and could provide the necessary consideration for contract formation.

¶ 12. Defendant is correct in noting that parents have no legal obligation to support their children beyond the age of minority, and that family courts are thus powerless to order postsecondary education payments absent the agreement of the parties. See Milligan v. Milligan, 158 Vt. 436, 441-43, 613 A.2d 1281, 1284-85 (1992); 15 V.S.A. § 659(b) ("If the parties agree, the court may include in the child support order an additional amount designated for the purpose of providing for postsecondary education."). However, she misapprehends the effect of this circumstance on the existence of consideration in an agreement between the parties. To satisfy the

6

consideration requirement, the parties did not have to obtain benefits which fulfilled preexisting legal obligations. "Simply put," in order to satisfy the consideration requirement, "the promisor must receive something desired for his or her own advantage." Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc., 158 Vt. 594, 599, 614 A.2d 812, 815 (1992) (explaining that "a mere expectation or hope of benefit is sufficient to serve as consideration" (quotation omitted)). Moreover, the logical implication of the fact that a court could not order the parties to pay for their children's postsecondary education absent the parties' agreement is that the parties may agree to fund their children's postsecondary pursuits.

¶ 13.    Nor does the fact that the benefits obtained in this agreement may flow largely to third parties preclude a determination of consideration. Restatement (Second) of Contracts § 71 cmt. e (1981) ("It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous."); see also Kneebinding, Inc. v. Howell, 2014 VT 51, ¶ 17, 196 Vt. 477, 99 A.3d 612 (noting that "[t]he definition of a benefit is extremely broad" (quotation omitted)). Here, the parties both wanted their children's college tuition bills to be paid. In sum, both committed, to their detriment, and based upon the promise of the other party, to pay monies they were not obligated to pay. Plaintiff's agreement to pay 75% of the children's tuition costs was what defendant bargained for in exchange for her agreement to pay 25% of those costs. Thus, there was consideration for the tuition agreement.

¶ 14.    Because it is not for the court to determine the adequacy of that consideration, and defendant does not contend that the other requisites for a binding contract were not present, this ends our inquiry concerning the initial tuition agreement. See Lloyd's Credit Corp., 158 Vt. at 599, 614 A.2d at 815 ("[C]onsideration can exist without economic benefit or advantage; a benefit need not be measurable in money. The extent of a benefit is not important; a very slight advantage is sufficient to constitute consideration." (quotations and citation omitted)); see also Restatement

7

(Second) of Contracts § 79 ("If the requirement of consideration is met, there is no additional requirement of . . . equivalence in the values exchanged."). We hold that the tuition agreement was a valid contract between the parties such that, if plaintiff agreed to waive defendant's obligation thereunder in connection with the second agreement, he would have given up a legal right he was otherwise free to exercise.

## II. The COLA Modification

¶ 15. However, defendant argues that the court's conclusion that the parties entered a binding agreement to waive the COLA was error for several other reasons. First, she asserts that the higher standard for establishing changed circumstances to modify the compensatory component of permanent maintenance established in Weaver v. Weaver, 2017 VT 58, 205 Vt. 66, 171 A.3d 374, deprives the court of the ability to find that defendant had agreed to waive the COLA. Second, she argues that if an agreement to waive the COLA existed, it is nonetheless unenforceable because such a waiver offends public policy. Third, she posits that one of the findings underlying the court's determination of the existence of the COLA modification agreement was clearly erroneous, and therefore the finding of the contract's existence cannot stand. Finally, she asserts that even if a valid agreement was reached regarding waiver of her right to receive COLAs, the agreement was unconscionable and therefore unenforceable. We find no merit in the first two arguments, but agree that the trial court's legal conclusions are undermined by a clearly erroneous finding. Given this result, we do not reach her final contention.

¶ 16. With respect to defendant's first argument, we reiterate that this case is not about an attempt by plaintiff to modify the existing order by court process. Rather, plaintiff asserts a contractual agreement whereby defendant agreed to waive receipt of the COLA. We have previously recognized that parties may make such agreements. Zink, 2016 VT 46, ¶ 21 (holding that argument that parties entered into agreement whereby wife accepted reduced spousal maintenance payments "whether based upon principles of contract, equitable estoppel, or waiver,

8

is distinct from an argument that the court-ordered spousal maintenance obligation was itself modified by the parties' agreement or conduct"). We see no reason why the higher standard for family-court modification of the compensatory component of permanent maintenance precludes an agreement to waive the COLAs. Thus, if the parties agreed that plaintiff would assume the children's college tuition expenses in exchange for being relieved of the obligation to pay COLA on the maintenance payments, the fact that the COLA may have been related, in whole or in part, to a compensatory permanent maintenance obligation is of no moment.

¶ 17. Although this divorce preceded this Court's clarification of the compensatory aspect of permanent maintenance in Weaver v. Weaver, the trial court recognized in its divorce order that the maintenance award contained a substantial permanent component to compensate defendant for her contributions to the marriage. See 2017 VT 58, ¶ 30 ("Because the necessary showing for changed circumstances for the compensatory portion of permanent maintenance is more exacting, when a court orders permanent maintenance and a portion of the permanent award is intended to compensate the recipient spouse for contributions made during marriage, the court should identify what portion of the permanent award is made on that basis."). The court did not make a specific allocation of the compensatory component of the permanent award. Defendant contends that if an agreement to waive the COLA existed, it should nonetheless be unenforceable because such a waiver offends public policy, likening the compensatory component of permanent maintenance to child support. The trial court acknowledged defendant's contention but did not resolve it. We do so here.

¶ 18. We first note that defendant's analogy to child support is wholly inapposite. As we recognized in Weaver, child support and spousal maintenance payments "serve[] entirely different purposes, [are] governed by different statutory regimes, and [are] not interchangeable." 2017 VT 58, ¶ 39. "Our cases have sought to protect children against loss of child support" through the actions of their parents, and the resulting prohibition on a parent's waiver of child support is

9

consistent with the Legislature's articulation of the public policy underlying the child-support statute. Id. ¶ 40; see also 15 V.S.A. § 650 ("The legislature . . . finds and declares as public policy that parents have the responsibility to provide child support . . . ."). In contrast, "[s]pousal maintenance is intended to provide for the recipient spouse's own needs, not the needs of the parties' children[.]" Weaver, 2017 VT 58, ¶ 39. The recipient spouse is therefore free to use the maintenance award as he or she sees fit—including maintenance awards with compensatory components.

¶ 19. We have long recognized the importance of freedom of contract. Osgood v. Cent. Vt. Ry. Co., 77 Vt. 334, 344, 60 A. 137, 140 (1905) ("[T]he right of private contract is no small part of the liberty of the citizen . . . ." (quotation omitted)); Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 61, 208 Vt. 578, 201 A.3d 326 (observing that private parties may contract to waive even rights of constitutional magnitude). In fact, undergirding compensatory maintenance "is the recognition that some marriages can include circumstances analogous to a contractual bargain"; the award itself is "an attempt to continue to enforce that bargain" following the dissolution of marriage. Weaver, 2017 VT 58, ¶ 23. It would be wholly at odds with this principle to hold that, once a court has determined that an obligee is entitled to compensatory maintenance in order to receive the benefits of the marital bargain post-divorce, she or he is forbidden to alienate the benefit of that bargain as desired, including—as permissible with other forms of maintenance—waiving it as consideration for an agreement with the obligor. Finally, we note that the power to declare a contract void because it violates public policy " 'is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.' " Barrett v. Carden, 65 Vt. 431, 434, 26 A. 530, 531 (1893) (quoting Richmond v. R.R. Co., 1868 WL 315, *5 (Iowa 1868)). The agreement by the parties whereby defendant would waive the COLA to spousal maintenance, if it was made, does not raise concerns sufficient to offend public policy.

¶ 20.    Defendant also contends the court made erroneous findings concerning the agreement for plaintiff to pay all of the youngest child's tuition in exchange for defendant waiving the right to have COLAs applied to the maintenance she was receiving.  As a basis for concluding the parties had modified the tuition agreement, the trial court found "defendant sent a note to plaintiff asking plaintiff to address the failure to include cost of living increases and also indicating that she did not want to continue paying 25% of the college tuition as the parties had previously agreed."  The note in question states, in pertinent part:

> Jerry
>
> This check for $564.00 is for the following:
>     99.00 for fridge
>     + 465.00 towards Lauren's tuition.
>
> Balance remaining on tuition bill is $3000.00.
>
> Also, I have not received a cost of living increase in my spousal maintenance money in a very long time.  Why?  I believe you should look into this.
>
> . . . .
>
> MaryAnn

While the note does acknowledge both defendant's agreement to pay at least some portion of her daughter's college tuition and defendant's failure to receive COLAs, it simply cannot reasonably be construed to indicate that she no longer wanted to pay 25% of the college tuition.  It says nothing in this regard.  Therefore, this finding by the trial court is clearly erroneous.  Alberino v. Balch, 2008 VT 130, ¶ 7, 185 Vt. 589, 969 A.2d 61 (mem.) ("Findings are clearly erroneous if there is no credible evidence in the record to support them.").  While the trial court made additional findings concerning the course of conduct by the parties over the next several years as providing additional support for the existence of a modification, because "it is not the role of this Court to reweigh the evidence or assess the credibility of witnesses," we cannot determine whether, absent the erroneous

finding that defendant broached the topic of modifying the initial agreement, the trial court would still be persuaded that the modification existed. Sweet, 2018 VT 122, ¶ 13.

¶ 21. However, defendant is incorrect in asserting that one party's "sole subjective testimony" is per se insufficient to support a finding that two parties intended to enter or modify a contract. See, e.g., George Pridemore & Son v. Traylor Bros., 311 S.W.2d 396, 397 (Ky. 1958) ("If there is sufficient evidence to show a meeting of the minds even though [one party] denies it, then a court or jury may be justified in finding a contract existed."). We remand not because excising the erroneous finding would render the remaining findings insufficient to support the existence of a contract. Rather, we remand because we cannot speculate as to whether the court's finding of a contract would survive in the absence of the erroneous finding. See Kanaan v. Kanaan, 163 Vt. 402, 407, 659 A.2d 128, 132 (1995) ("[W]e will not speculate as to the basis upon which the court made its findings and reached its conclusions, where the court's decision does not spell out this basis."); cf. Town of Rutland v. City of Rutland, 170 Vt. 87, 90, 743 A.2d 585, 587-88 (1999) (explaining that existence of contract "depends on facts as well as the reasonable inferences to be drawn from them, and is also influenced by the situation of the parties and the subject matter"). As a result, remand is necessary for the trial court to determine whether the parties entered an agreement with corrected factual findings. In connection with this remand, we note that below, the trial court considered defendant's receipt of ten years of maintenance payments without COLA to constitute "waiver by performance." However, it is unclear whether the court was referring to waiver in the context of evidence that defendant made an oral agreement to waive the COLA, or whether it was referring to waiver as the relinquishment of a known right through

12

defendant's failure to seek enforcement of the COLA sooner than she did.[5] Upon remand, the trial court should clarify its conclusion regarding defendant's "waiver by performance."[6]

¶ 22. Defendant also contends that even if a valid agreement was reached regarding waiver of her right to receive COLA adjustments, the agreement was unconscionable and therefore unenforceable. We do not reach this argument because it will become relevant only if the trial court finds the existence of a contract on remand. By the same token, we do not reach plaintiff's assertions that promissory estoppel, equitable estoppel, laches, or quasi-contractual theories afford him alternative grounds for relief; they will become relevant only if the trial court concludes the parties did <u>not</u> have a contract. See <u>Hayes v. Town of Manchester Water & Sewer Bds.</u>, 2014 VT 126, ¶ 37, 198 Vt. 92, 112 A.3d 742 (holding that doctrine of promissory estoppel applies only "where there is no contract" (quotation omitted)); <u>DJ Painting, Inc. v. Baraw Enters., Inc.</u>, 172 Vt. 239, 243, 776 A. 2d 413, 417 (2001) (noting that although existence of a contract does not necessarily preclude remedy in quasi-contract, "the terms of the contract and the remedies exercised under it become highly relevant in determining whether denying further payment to

---

[5] Plaintiff asserts that defendant's claim is barred by laches, rendering the meaning of "waiver by performance" even more uncertain.

[6] Such clarification is necessary because, to the extent the court intended to suggest that defendant relinquished a known right through her failure to seek enforcement of the COLA sooner than she did, it erred. Section 606(a) of Title 15 provides that, where a party is entitled to receive spousal-maintenance payments pursuant to a court order, he or she may seek determination and payment of the amount due thereunder at any time if the order is "still in force." Here, the parties do not dispute that the divorce order—under which maintenance payments to defendant were ongoing—was still in force when defendant filed her enforcement motion. Therefore, unless defendant otherwise waived her right to seek enforcement, her motion was timely. However, defendant's delay alone "cannot be construed as a waiver of her rights because waiver is not created by mere oversight and cannot be inferred from silence." <u>Kanaan</u>, 163 Vt. 402, 413-14, 659 A.2d at 136 (holding that wife's delay in filing motion to enforce oral agreement for husband to pay spousal maintenance following their separation was not waiver, because "waiver requires proof of a voluntary and intentional relinquishment of a known and enforceable right"). Defendant's right to enforce the COLA provision of the maintenance order while it was still in force could not be waived through mere inaction. Something more—such as the affirmative oral agreement alleged by plaintiff—was required.

13

plaintiff is unjust, such that we should imply a contract where there is none"); <u>Beecher v. Stratton Corp.</u>, 170 Vt. 137, 140, 743 A.2d 109, 1096 (1999) (explaining that "[a]ll of the circumstances of the case must be evaluated in determining whether the doctrine [of equitable estoppel] applies"); <u>Preston v. Chabot</u>, 138 Vt. 170, 172, 412 A.2d 930, 931 (1980) (observing that "a trial court's determination on the issue of laches is a matter of much discretion").

<u>Reversed and remanded for further proceedings consistent with this opinion</u>.


FOR THE COURT:


_____

Associate Justice